[No. B165475. Second Dist., Div. Seven. Feb. 4, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE RAUL VANEGAS, Defendant and Appellant.

594

COUNSEL

Peter Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Jeffrey B. Kahan and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**JOHNSON, J.**—Defendant Jose Vanegas challenges his conviction for second degree murder. He contends the trial court erred in prohibiting his expert witness from testifying to a portion of a report by another expert on which his expert based his opinion. He further contends the trial court erred in instructing the jury that for purposes of determining implied malice a violation of California's "basic speed law" is an act inherently dangerous to human life. We reverse the second degree murder conviction and affirm the remainder of the judgment.

## FACTS AND PROCEEDINGS BELOW

At approximately 9:30 a.m. Rosa Oliva was sweeping and hosing down the alleyway at the rear of an apartment building in Los Angeles, where she worked as the manager. Several men were in the alley drinking near a utility pole. Sifredo Murillo, who appeared to be drunk, was leaning against the pole.

As Oliva proceeded with her chores she saw defendant Vanegas enter the alley from the south driving a pickup truck. Vanegas accelerated as he drove up an incline in the middle of the alley. Oliva moved to get out of the truck's way. She saw the truck veer left toward the utility pole. The left bumper of the truck hit Murillo, "pressing" him against the pole. Vanegas reversed the truck then accelerated again, continuing to press Murillo against the pole.

When Vanegas drove out of the alley he almost struck a police car. Officer Moreno, who was driving the police car, stopped the truck for a traffic violation. When Vanegas got out of the truck Moreno observed his speech was slurred, his eyes were bloodshot, and he smelled of alcohol. Moreno concluded Vanegas was under the influence of alcohol and placed him under arrest.

Meanwhile, Jose Blanco, who had been in the alley with Murillo, ran to the police car and told Moreno about the accident in the alley. Moreno drove his car to the alley where he saw Murillo on his back, not breathing.

While Moreno and his partner waited for additional police units to arrive, Vanegas told Moreno he had just "got jumped" by some gang members about half an hour earlier and stated "that person over there [indicating the victim Murillo] was the one that sent them." Moreno said nothing. Vanegas then stated: "I saw him in the alley when I was driving in alley. So I said, 'Oh, I'll take care of this right now.' "

Murillo suffered multiple injuries to his pelvis, internal organs and multiple blood vessels in his pelvic area. He died as a result of blood loss stemming from these injuries.

A breath test administered to Vanegas at 12:10 p.m., approximately three hours after the incident, showed a blood-alcohol level between .17 and .18 percent. A criminalist testified in his opinion people with a blood-alcohol level of .08 percent or higher are impaired and cannot safely drive a vehicle. He estimated someone with a blood-alcohol level of .18 percent at 12:10 p.m. would have had a blood-alcohol level of between .21 and .26 percent at 9:30 a.m. assuming no further consumption of alcohol.

Dr. Josef Maatuk, an accident reconstruction expert hired by the defense, reviewed police reports, medical reports, and photographs relating to the case. He also spoke with the witness, Oliva, and reviewed a written report prepared by the previous defense expert who died before trial. Based on his review of this evidence Dr. Maatuk told the jury in his opinion Vanegas was traveling 15 to 16 miles per hour when he struck Murillo. The court did not allow Dr. Maatuk to testify the previous defense expert had put the speed at 10 miles per hour.

The trial court instructed the jury it could find Vanegas guilty of second degree murder based on implied malice if it found inter alia "the killing resulted from an intentional act [and] the natural consequences of the act are dangerous to human life." The court further instructed the jury "a violation of the basic speed law is the commission of an act inherently dangerous to human life . . . ."

The jury found Vanegas guilty of second degree murder, driving under the influence of alcohol and causing great bodily injury to another, and driving with a .08 or higher blood-alcohol level and causing great bodily injury to another. The jury did not return a verdict on the manslaughter charge and this count was dismissed.

Vanegas's appeal focuses on his conviction for second degree murder. We reverse that conviction because the trial court's instructions to the jury on

implied malice created a mandatory presumption any violation of California's basic speed law[1] constitutes an act "dangerous to human life."

## DISCUSSION

### I. THE TRIAL COURT DID NOT ERR IN PROHIBITING THE DEFENSE EXPERT FROM TESTIFYING AS TO THE OPINION OF THE PREVIOUS DEFENSE EXPERT ON VANEGAS'S SPEED IN THE ALLEY.

The defense retained an accident reconstruction expert, Dr. Whalley, who prepared a written report in which he concluded Vanegas was driving approximately 10 miles per hour when he struck Murillo. This conclusion aided the defense because, as we discuss below, Vanegas's speed was an important factor in the jury's determination whether he was engaged in an act "dangerous to human life" for purposes of implied malice.[2]

Dr. Whalley died prior to trial and the defense retained a new accident reconstruction expert, Dr. Maatuk, who concluded Vanegas's speed was somewhere between 10 and 20 miles per hour and most likely 15 or 16 miles per hour.

Obviously, Maatuk's opinion was not as favorable to the defense as Whalley's. In order to get Whalley's more favorable opinion before the jury, Vanegas proposed to elicit testimony from Maatuk that in reaching his conclusions about the incident he considered, among other things, Whalley's opinion Vanegas was going 10 miles per hour at the time of impact. This evidence, Vanegas asserted, was not being introduced for the hearsay purpose of proving the truth of the matter asserted—that Vanegas was traveling 10 miles per hour at the time he struck Murillo—but solely for the purpose of showing one of the matters Maatuk relied upon in forming his own opinion. The trial court granted the People's motion in limine to exclude testimony about Whalley's conclusion as to Vanegas's speed.

The trial court acted within its discretion.

The trial court recognized hearsay was not the issue because Vanegas could plausibly argue Whalley's opinion was not being offered to prove Vanegas's speed. The issue was whether evidence of Whalley's opinion *would be viewed by the jury* as proof of Vanegas's speed. As our Supreme Court explained in *People v. Catlin*: "On direct examination, the expert may explain the reasons

---

[1] Vehicle Code section 22350.

[2] The prima facie speed limit in an alley is 15 miles per hour. (Veh. Code, § 22352, subd. (a)(1)(C).)

for his opinions, *including the matters he considered in forming them.* However, prejudice may arise if, ' " 'under the guise of reasons,' " ' the expert's detailed explanation ' " '[brings]' " ' before the jury incompetent hearsay evidence.' " ' [citations] In this context, the court may ' " 'exclude from an expert's testimony any hearsay matter whose irrelevance, unreliability, or potential for prejudice outweighs its proper probative value.' " '[3]

Granted, some appellate courts have observed problems of this nature ordinarily can be cured by instructing the jury matters relied on by an expert are admitted only to show the basis of the expert's opinion.[4] The question before us, however, is not whether the trial court had discretion to choose this course of action but whether it abused its discretion in choosing the course it did.

Courts have also observed "where hearsay evidence is recited in detail, a limiting instruction may not remedy the problem."[5] In the present case the proffered evidence would have confused the issue of defendant's speed by introducing two conflicting opinions from the defendant's own experts. The first expert was not available for cross-examination, thereby prejudicing the prosecution. The evidence of the first opinion was likely to mislead the jury because of its detail. Vanegas offered no explanation why the jury would need the first expert's opinion in order to understand or evaluate the second expert's opinion.

■ Taking all these factors into consideration we conclude the trial court did not abuse its discretion under Evidence Code section 352 in excluding the first expert's opinion as to speed.

II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN INSTRUCTING THE JURY ANY VIOLATION OF THE BASIC SPEED LAW IS INHERENTLY DANGEROUS TO HUMAN LIFE.

A. Instructing The Jury Any Violation Of The Basic Speed Law Is Inherently Dangerous To Human Life Created An Impermissible Mandatory Presumption.

The trial court instructed the jury in order to find Vanegas guilty of second degree murder based on implied malice it must find: "The killing resulted

---

[3] *People v. Catlin* (2001) 26 Cal.4th 81, 137 [109 Cal.Rptr.2d 31, 26 P.3d 357].

[4] See e.g., *Grimshaw v. Ford Motor Co.* (1981) 119 Cal.App.3d 757, 789 [174 Cal.Rptr. 348].

[5] *Grimshaw v. Ford Motor Co., supra*, 119 Cal.App.3d at page 789.

from an intentional act . . . the natural consequences [of which] are dangerous to human life and the act was deliberately performed with the knowledge of [the] danger to, and with conscious disregard for, human life."

The court further instructed the jury if it found the killing was committed without malice it could find Vanegas guilty of vehicular manslaughter if it found, among other things: "The driver of the vehicle committed an unlawful act not amounting to a felony, which under the circumstances of its commission was dangerous to human life, namely, a violation of Vehicle Code section 22350, the basic speed law . . . ." In addition, the court instructed the jury it could find Vanegas guilty of driving with a .08 blood-alcohol level and causing bodily injury if it found Vanegas "did an act forbidden by law in the driving of the vehicle, namely violated [the basic speed law] . . . ."

With respect to the basic speed law itself, the court instructed the jury: "No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent . . . and in no event at a speed which endangers the safety of persons or property. *A violation of the basic speed law is the commission of an act inherently dangerous to human life and safety . . . .*" (Italics added.)

Vanegas contends the italicized language in the basic speed law instruction told the jury any violation of the basic speed law established the "dangerous to human life" element of implied malice. The instructions thus established a mandatory presumption which withdrew this element from the jury's consideration in violation of Vanegas's rights under the Fifth, Sixth and Fourteenth Amendments. Vanegas further contends the instruction on the effect of proof of violation of the basic speed law is defective because a violation of that law is not in all cases dangerous to human life and safety.

■ An instruction which requires the jury to find an elemental fact (dangerousness to human life) upon proof of a predicate fact (violation of the basic speed law) would be unconstitutional because "[s]uch directions subvert the presumption of innocence accorded to accused persons and also invade the truth-finding task assigned solely to juries in criminal cases."[6]

■ In determining whether a challenged instruction constitutes an impermissible mandatory presumption we put ourselves in the place of the jurors and ask whether the instruction, "both alone and in context of the overall

---

[6] *Carella v. California* (1989) 491 U.S. 263, 265 [105 L.Ed.2d 218, 109 S.Ct. 2419] (presumption of intent to commit theft by fraud from failure to return rental car within 20 days of demand is unconstitutional).

charge, could have been understood by reasonable jurors to require them to find the presumed fact if the State proves certain predicate facts."[7]

We have no doubt reasonable jurors who are told a violation of the basic speed law is "the commission of an act inherently dangerous to human life" would interpret this instruction to mean "the natural consequences" of a violation of the basic speed law "are dangerous to human life." Although legal philosophers on the jury might argue there is a distinction between an act which is inherently dangerous to human life—jumping off the roof of a 40-story building—and an act which is not inherently dangerous to human life—jumping off a one-foot ledge—but whose natural consequences are dangerous—jumping off a one-foot ledge into a vat of acid. But the instructions given here do not implicate this distinction. In this case the trial court told the jury, in essence, the second element of implied malice requires proof of an act whose natural consequences are dangerous to human life and proof of a violation of the basic speed law is proof of such an act. The court did not tell the jury it had a choice or that it could reasonably *infer* certain acts were inherently dangerous. It told the jurors in unqualified terms acts which violate the basic speed law *are* inherently dangerous to human life. Therefore the jurors could only conclude that if they found Vanegas violated the basic speed law they must also find he committed an act whose natural consequences were dangerous to human life.

The People argue the jury would not interpret the subject instructions as creating a conclusive presumption because the instructions apply to different crimes. The court gave the implied malice instruction in connection with the second degree murder charge but gave the basic speed law instruction in connection with the manslaughter and driving under the influence charges.

We do not find this argument persuasive. The trial court did not tell the jury it should only apply the basic speed law instruction to the manslaughter and driving under the influence charges. On the contrary, the court instructed the jury: "Do not single out any particular sentence or any individual point or instruction and ignore the others. Consider the instructions as a whole and each in light of all the others. The order in which the instructions are given has no significance as to their relative importance."

Turning to the substance of the instructions, the People contend the basic speed law instruction did not remove the "dangerousness" element of implied malice from the jury's determination. Rather, in finding the elements necessary to establish Vanegas violated the basic speed law the jury necessarily found Vanegas committed an intentional act whose natural consequences

---

[7] *Carella v. California, supra,* 491 U.S. at page 265.

were dangerous to human life. The People reason as follows. The jury convicted Vanegas on the charge of driving with a .08 or higher blood-alcohol level and causing bodily injury. Under the trial court's instructions quoted above,[8] this conviction meant the jury found Vanegas violated the basic speed law. To find Vanegas violated the basic speed law the jury had to find he drove at a speed greater than reasonable or prudent or which endangered the safety of persons or property. Because the jury found the People established at least one of these elements and because " [s]peed laws are designed to prevent injury to persons,"[9] it follows that by violating the basic speed law Vanegas necessarily committed an act "dangerous to human life" thereby satisfying the second element of implied malice.

The People's contention assumes a person cannot violate the basic speed law without committing an act dangerous to human life. This is not so. While it is true a person can violate the basic speed law by driving "at a speed which endangers the safety of persons," this is not the only manner in which the law can be violated. It can also be violated by driving at a speed "which endangers . . . property" or at a speed "greater than is reasonable or prudent."[10] In our view there is a significant difference between doing an act which may not be "reasonable" or "prudent" and doing an act which carries a "high probability that it will result in death" as required for implied malice.[11] The fact the Legislature made "speed which endangers the safety of persons" a separate ground for conviction shows it did not believe speed which is merely unreasonable or imprudent necessarily endangers human safety.

Finally, the People argue the subject instructions do not create a mandatory presumption because the instructions on manslaughter told the jury to consider whether the defendant's act "under the circumstances of its commission was dangerous to human life." We find this argument unconvincing.

As the People concede, the instructions to consider the circumstances of the act's commission was not given in the context of instructing the jury on implied malice. Rather, the court gave this instruction in the context of instructing the jury on the specific elements of voluntary manslaughter. Notwithstanding the court's direction to consider all the instructions together, the fact the instruction explicitly related to proof of manslaughter makes it unlikely the jury would cross-apply the instruction to the specific elements of second degree murder. Furthermore, the court's manslaughter instructions were confusing and contradictory because on the one hand they told the jury

---

[8] See page, *ante.*

[9] *People v. Flores* (1947) 83 Cal.App.2d 11, 13–14 [187 P.2d 910].

[10] Vehicle Code section 22350

[11] *People v. Watson* (1981) 30 Cal.3d 290, 300 [179 Cal.Rptr. 43, 637 P.2d 279].

to consider the circumstances of the act's commission but on the other hand told the jury a violation of the basic speed law was a circumstance dangerous to human life.[12] Also undercutting the People's argument is the fact the jury did not convict Vanegas of manslaughter. Thus, it cannot be said the jury made an independent determination Vanegas's speed in the alley was dangerous to human life under the particular circumstances of this case.

■ For the reasons stated above, we conclude the instruction on the dangerousness to human life element of implied malice together with the instruction any violation of the basic speed law is the commission of an act inherently dangerous to human life created an impermissible mandatory presumption proof of the latter is proof of the former.

We turn now to the question whether the trial court's error was prejudicial.

B. *The Instructional Error Was Prejudicial.*

■ An instructional error which creates an improper mandatory presumption falls within the category of trial error subject to *Chapman* review.[13] Under this standard of review, to find the error harmless we must be able to say beyond a reasonable doubt "[the] unconstitutional presumption did not contribute to the verdict."[14] In the present case we cannot say we are convinced beyond a reasonable doubt the erroneous instruction did not contribute to the verdict because we cannot say the presumption "was unimportant in relation to everything else the jury considered" on the issue of dangerousness to human life.[15]

The first step in our analysis is to "ask what evidence the jury actually considered in reaching its verdict."[16] In making this assessment we cannot necessarily assume the jury considered all the evidence bearing on the issue. As the Supreme Court pointed out in *Yates v. Evatt*, "the terms of some presumptions so narrow the jury's focus as to leave it questionable that a reasonable juror would look to anything but the evidence establishing the

---

[12] As will be recalled, the court instructed the jury in determining the manslaughter charges it should consider whether "[t]he driver of the vehicle committed an unlawful act not amounting to a felony, which under the circumstances of its commission was dangerous to human life, *namely, a violation of Vehicle Code section 22350, the basic speed law* . . . ." (Italics added.)

[13] *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824]; *People v. Flood* (1998) 18 Cal.4th 470, 502–503 [76 Cal.Rptr.2d 180, 957 P.2d 869].

[14] *Yates v. Evatt* (1991) 500 U.S. 391, 404 [114 L.Ed.2d 432, 111 S.Ct. 1884].

[15] *People v. Frazier* (2001) 89 Cal.App.4th 30, 38 [107 Cal.Rptr.2d 100], citing *Yates v. Evatt, supra,* 500 U.S. at page 403.

[16] *Yates v. Evatt, supra,* 500 U.S. at page 404.

predicate fact in order to infer the fact presumed."[17] The presumption here, that any act which violates the basic speed law is an act whose natural consequences are dangerous to human life, is such a presumption. Having determined Vanegas violated the basic speed law (which did not require a finding Vanegas endangered the safety of persons)[18] the jury had no need to make an independent determination of dangerousness when considering whether Vanegas had acted with implied malice in the killing of Murillo. Indeed, the jurors could have viewed doing so as a waste of time and contrary to their instructions.[19] Furthermore, as discussed above, the fact the jurors could not agree on a verdict as to the manslaughter charge is strong evidence they did not unanimously believe Vanegas "committed an unlawful act . . . which under the circumstances of its commission was dangerous to human life."

Having determined the jury most likely focused solely on the fact Vanegas violated the basic speed law we need look no further to determine the error was prejudicial.[20]

Even if we do assume the jury considered all the relevant evidence on the issue of dangerousness to human life we cannot say this evidence "is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the presumption.[21]

The evidence Vanegas committed an act whose natural consequences were dangerous to human life consisted of evidence he was intoxicated (as much as three times the legal limit), people were present in the alley, the alley was wet, and his speed exceeded the 15 miles per hour prima facie speed limit. For the reasons explained below, we do not view this evidence as so convincing on the issue of dangerousness the unlawful presumption could have had only "minimal" effect on the jury's verdict.[22]

Although the evidence of Vanegas's blood-alcohol level was undisputed the People introduced no evidence his driving ability was impaired. While the jury might have drawn such an inference, the prosecutor, seeking a first

---

[17] *Yates v. Evatt, supra,* 500 U.S. at pages 405–406.

[18] See discussion at page , *ante.*

[19] See *Yates v. Evatt, supra,* 500 U.S. at page 406, footnote 10. This may explain how the jury was able to sort through 11 potential verdicts and render its decision in approximately four hours of deliberation.

[20] *Yates v. Evatt, supra,* 500 U.S. at page 406.

[21] *Yates v. Evatt, supra,* 500 U.S. at page 405.

[22] *Yates v. Evatt, supra,* 500 U.S. at page 405.

degree murder conviction, urged them not to. In her closing argument she asked the jury to find Vanegas's intoxication "did not impede his thoughts on that day."

Two witnesses testified to Vanegas's speed in the alley. Jose Blanco, an eyewitness, testified Vanegas was traveling approximately 40 to 45 miles per hour and accelerating when he struck Murillo, pressing him against the utility pole. Vanegas's expert testified Vanegas was traveling approximately 15 to 16 miles per hour when he struck Murillo. We believe it highly unlikely the jury credited Blanco's testimony. A vehicle striking a utility pole at 45 miles per hour would be reduced to scrap metal and the driver seriously injured if not killed. Had Vanegas struck the pole at 45 miles per hour he certainly could not have simply backed up and driven away as all the witnesses testified he did. We conclude therefore a reasonable juror would have rejected Blanco's testimony and found Vanegas was traveling approximately one mile per hour over the alley speed limit at the time he struck Murillo.

In *People v. Watson*, the People appealed from an order dismissing a charge of second degree murder. The facts elicited at the preliminary hearing showed the defendant, legally intoxicated, "drove at highly excessive speeds through city streets [and] nearly collided with a vehicle after running a red light . . . ." After "skidding to a stop [he] thereafter resumed his excessive speed before colliding with the victim's car . . . ."[23] Our Supreme Court found these facts would "readily support a conclusion that defendant acted wantonly and with a conscious disregard for human life."[24] The court went on to say, however: "We do not suggest that the foregoing facts conclusively demonstrate implied malice, or that the evidence necessarily is sufficient to convict defendant of second degree murder. On the contrary, it may be difficult for the prosecution to carry its burden of establishing implied malice to the moral certainty necessary for a conviction."[25]

In contrast to the facts in *Watson* showing a pattern of dangerous and erratic driving, the facts in the present case, as summarized by the prosecutor, showed Vanegas "was driving northbound up the alley, without hitting any of the telephone poles, without hitting the fence, without hitting any people." After striking Murillo, "he straightens out his vehicle to go north and exit the alley. He doesn't hit anyone or anything else, not the truck that's parked right behind the telephone pole, not the people standing near the Jack-in-the-Box area, and not the cars . . . . He makes a decision to not go left because he sees the cars coming. He's not so drunk that he does not know what's going on."

---

[23] *People v. Watson, supra,* 30 Cal.3d at page 301.

[24] *People v. Watson, supra,* 30 Cal.3d at page 301.

[25] *People v. Watson, supra,* 30 Cal.3d at page 301.

If the much stronger facts in *Watson* were not necessarily sufficient to establish implied malice neither are the facts in the case before us.

The People argue the jury could have found Vanegas guilty of second degree murder based on express malice. The obvious problem with this theory is that in order to find Vanegas had an intent to kill Murillo the jury would have had to believe Vanegas's story to the police he decided to kill Murillo when he saw him in the alley and recognized him as the person who had set him up to be "jumped" by some gang members a short time before. If the jury believed Vanegas's version of events then it would have had to find he acted with premeditation and convict him of first degree murder. Furthermore, it is extremely unlikely the jury believed Vanegas's statement to the police. There was no evidence Vanegas or Murillo were gang members or associated with gangs. There was no evidence confirming Vanegas's claim he had been attacked by a gang earlier in the day. And, from the witnesses' description of the alley it would not seem possible for Vanegas to have seen Murillo until after he entered the alley and was almost upon him.

Although the jury was entitled to consider Vanegas's admission in determining whether he had an intent to kill Murillo this evidence is not "so overwhelming" we can say beyond a reasonable doubt the verdict would have been the same without the instructional error.

## DISPOSITION

The conviction for second degree murder is reversed. In all other respects the judgment is affirmed.

Zelon, J., concurred.

**PERLUSS, P. J.**—I respectfully dissent. I agree the trial court erred in instructing the jury a violation of the basic speed law is an act inherently dangerous to human life, thereby relieving the People of their burden to prove beyond a reasonable doubt one of the factual elements for a finding of implied malice necessary to support the conviction of Jose Raul Vanegas for second degree murder. (See *People v. Flood* (1998) 18 Cal.4th 470, 482 [76 Cal.Rptr.2d 180, 957 P.2d 869] [instruction that individuals in motor vehicle pursuing defendant were "peace officers" in prosecution under Vehicle Code section 2800.3 violated defendant's due process right to have the jury determine each element of the charged offense].) However, when viewed in light of the evidence and in context with all other instructions given in this case, I do not believe the error was prejudicial. (*Flood,* at pp. 502–503, 507 [instructional error that improperly describes or omits an element of an offense or that raises an improper presumption falls within the broad category

of error subject to harmless error review under *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.2d 705]; such instructional error may be found harmless when "there is no possibility that the error affected the result"].)

The trial court instructed the jury, pursuant to CALJIC No. 8.31, that the unlawful killing of a human being is murder of the second degree when "1. The killing resulted from an intentional act, [¶] 2. The natural consequences of the act are dangerous to human life, and [¶] 3. The act was deliberately performed with knowledge of the danger to, and conscious disregard for, human life." The court further instructed the jury, pursuant to CALJIC No. 8.90, that vehicular manslaughter with gross negligence (Pen. Code, § 192, subd. (c)(1)) was a lesser included offense of second degree murder and that this offense required proof Vanegas, while driving, had unintentionally caused the death of another human being by "commit[ing] with gross negligence an unlawful act not amounting to a felony, which under the circumstances of its commission was dangerous to human life, namely a violation of Vehicle Code Section 22350 [the basic speed law]."[1] Because the jury convicted Vanegas of second degree murder rather than vehicular manslaughter with gross negligence, it necessarily found Vanegas had acted *intentionally with both knowledge of and conscious disregard for the danger to human life* created when he drove through the alley while intoxicated and at an excessive speed. Notwithstanding the erroneous instruction regarding the effect of violating the basic speed law, therefore, the jury must have made its own independent determination that Vanegas's driving in fact endangered the safety of others *and* that he was actually aware of or consciously disregarded that danger.

Overwhelming evidence supports the jury's finding. The criminalist testified, based on Vanegas's blood-alcohol level following his arrest, that at the time he struck Murillo, Vanegas had a blood-alcohol level between .21 and .26 percent—two-and-one-half to three times the legal limit. Although the defense's accident reconstruction expert opined that Vanegas had been driving only 15 or 16 miles per hour down the narrow alley, in itself a violation of the basic speed law, one of the eyewitnesses to the incident testified Vanegas was driving at a much greater speed. A second eyewitness, Rosa Oliva, testified she saw Vanegas enter the alley in his pickup truck, accelerate as he drove up an incline and force Sifredo Murillo against a utility pole as the

---

[1] The trial court also instructed the jury, pursuant to CALJIC No. 8.90, that negligent vehicle manslaughter (Pen. Code, § 192, subd. (c)(2)) was a lesser included offense to vehicle manslaughter with gross negligence and explained that to prove this crime the People were required to prove Vanegas had unintentionally killed another person by committing an unlawful act not amounting to a felony that "under the circumstances of its commission was dangerous to human life, namely a violation of Vehicle Code Section 22350, the Basic Speed Law."

truck veered left. Vanegas then reversed the truck and accelerated once again, continuing to press Murillo against the pole as he did so. Moreover, on leaving the alley, Vanegas drove wildly and almost struck a police car.

Under these circumstances I believe there is no possibility the court's erroneous instruction affected the outcome of the trial. (*People v. Flood, supra,* 18 Cal.4th at pp. 505, 507 ["in view of the actual verdict returned by the jury in this case there is no reasonable or plausible basis for finding that the instructional error affected the jury's verdict"]; see *People v. Frazier* (2001) 89 Cal.App.4th 30, 38 [107 Cal.Rptr.2d 100] ["the issue under *Chapman* is whether the jury *actually* rested its verdict on evidence establishing beyond a reasonable doubt the presumed fact . . . independently of the presumption . . . . [Citation.] We approach this inquiry by asking whether the force of the evidence considered by the jury in accordance with its instructions 'is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the presumption.' "].) Accordingly, I would affirm the judgment.

A petition for a rehearing was denied February 25, 2004, and respondent's petition for review by the Supreme Court was denied April 28, 2004. Werdegar, J., did not participate therein. Baxter, J., was of the opinion that the petition should be granted.