[No. B166883. Second Dist., Div. Seven. Aug. 18, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
LUIS SAUCEDO, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of sections II through V.

938

## COUNSEL

Kieran D. C. Manjarrez, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Jaime L. Fuster and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ZELON, J.**—Defendant and appellant Luis Saucedo argues on appeal that his robbery convictions (Pen. Code,[1] § 211) should be reversed on the basis of instructional error, prosecutorial misconduct, ineffective assistance of counsel, and juror misconduct. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On the evening of June 14, 2002, Saucedo confronted Jesus Pineda, Joseph Castro, and George Cabrera as they left a La Puente apartment building. Saucedo demanded to know where Pineda and the others were from; Pineda answered that he was from nowhere and was a "paisa," a person from Mexico who does not speak English. Saucedo accused him of lying, put a gun to Pineda's forehead, and announced that the men were in his barrio. Saucedo and his companion, Nicholas Papp, held the men at gunpoint, took their possessions, ordered them out of their van, and beat them, kicked them, and pistol-whipped them before threatening to kill them if they called the police.

As a result of the attacks, Pineda was unconscious and bloodied to the point of being unrecognizable. He suffered a seizure, a dislocated jaw, and permanent vision damage, and was hospitalized for a week after the attack. Cabrera's face was bruised and swollen; Castro was bruised and his skull cracked from being hit by the gun.

Pineda and Castro both identified Saucedo as the gunman in photographic lineups, at the preliminary hearing, and at trial. All three victims testified that Papp was the second assailant.

Saucedo and Papp claimed to be mere acquaintances and presented separate alibis. Saucedo's counsel did not advise the prosecutor of his alibi witnesses, Saucedo's mother and sister, until the trial had already begun. The

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

trial court permitted their testimony but instructed the jury with CALJIC No. 2.28 because of the late disclosure.

Papp and Saucedo were each convicted of three counts of second degree robbery, with gang and gun enhancements. The court sentenced Saucedo to 27 years 8 months in state prison. Saucedo appeals.

## DISCUSSION

### I. *CALJIC No. 2.28*

When he was arrested, Saucedo waived his *Miranda*[2] rights and was interrogated by the police, but did not offer an alibi. His counsel did not disclose the identity or expected testimony of any alibi witnesses during pretrial discovery. After the trial began, however, Saucedo's counsel announced two alibi witnesses, Saucedo's mother and sister. Saucedo's counsel acknowledged that this was "late discovery," said he "just recently learned" of the witnesses, and offered to make them available to the prosecutor's investigator. Because of the late disclosure of these witnesses, the trial court instructed the jury with CALJIC No. 2.28:

"The prosecution and the defense are required to disclose to each other before trial the evidence each intends to present at trial so as to promote the ascertainment of the truth, save court time and avoid any surprise which may arise during the course of the trial. Delay in the disclosure of evidence may deny a party a sufficient opportunity to subpoena necessary witnesses or produce evidence which may exist to rebut the noncomplying party's evidence.

"Disclosure of evidence is required to be made at least 30 days in advance of trial. Any new evidence discovered within 30 days of trial must be disclosed immediately. In this case, the defendant Saucedo failed to timely disclose the following evidence: the anticipated testimony of Hortencia Saucedo and Teresa Saucedo.

"Although Defendant Saucedo's failure to timely disclose evidence was without lawful justification, the Court has, under the law, permitted the production of this evidence during trial.

"The weight and significance of any delayed disclosure are matters for your consideration. However, you should consider whether the [concealed

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].

and or][3] untimely disclosed evidence pertains to a fact of importance, something trivial or subject matter already established by other credible evidence.

"A defendant's failure to timely disclose the evidence he intends to produce at trial may not be considered against any other defendant."

■ Saucedo makes scattershot objections to this instruction: It was irrelevant and confusing; it invited the jury to make speculative findings; it imposed a mandatory presumption of culpability per se; it amounted to a directed finding of guilt; it impermissibly shifted the burden of proof and lightened the prosecution's burden of proof; it imposed an impermissible sanction for and negative inference from post-arrest silence; and it created an inference of burden shifting from Saucedo's postarrest silence. Many of these arguments miss their mark. For instance, CALJIC No. 2.28 does not operate as a mandatory presumption of culpability per se. A presumption is "an assumption of fact that the law requires to be made from another fact or group of facts found or otherwise established" (Evid. Code, § 600), and it " 'tells the trier [of fact] that he or they *must* find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts.' [Citation.]" (*People v. Roder* (1983) 33 Cal.3d 491, 498 [189 Cal.Rptr. 501, 658 P.2d 1302].) "In determining whether a challenged instruction constitutes an impermissible mandatory presumption we put ourselves in the place of the jurors and ask whether the instruction, 'both alone and in context of the overall charge, could have been understood by reasonable jurors to require them to find the presumed fact if the State proves certain predicate facts.' [Footnote.]" (*People v. Vanegas* (2004) 115 Cal.App.4th 592, 599–600 [9 Cal.Rptr.3d 398].) Whether considered alone or in the context of the instructions as a whole, CALJIC No. 2.28 did not require jurors to find any fact—let alone an elemental fact—if the prosecution proved other predicate facts, nor did it direct a finding on Saucedo's alibi defense.

■ CALJIC No. 2.28's provision that "The prosecution and the defense are required to disclose to each other before trial the evidence each intends to present at trial" is not reasonably susceptible of interpretation as silently countermanding the other jury instructions setting forth the presumption of innocence and prosecution's burden of proof. (See *People v. Martin* (2000) 78 Cal.App.4th 1107, 1111–1112 [93 Cal.Rptr.2d 433] [" ' "In determining whether error has been committed in giving or not giving jury instructions,

---

[3] Although the court omitted references to concealment of evidence when reading the instructions to the jury, the written instructions contained the bracketed text.

we must consider the instructions as a whole . . . [and] assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given. [Citation.]" ' [Citation]"].) The jurors were clearly and fully instructed on the prosecution's burden to prove Saucedo guilty beyond a reasonable doubt by CALJIC Nos. 2.90 and 2.91, and they were further instructed to "[c]onsider the instructions as a whole and each in light of all the others." (CALJIC No. 1.01.)

■ Contrary to Saucedo's contention, CALJIC No. 2.28 was not "an improper judicial sanction on" Saucedo's "right to remain personally silent" because "[w]ithout specific clarifying instructions, it cannot be assumed the jury would understand that post-arrest police interrogation was 'not in-cluded' " in the instruction's sweep. First, if Saucedo felt that clarifying language was necessary to explicitly exclude his interrogation by the police, he should have proposed that language at trial. (*People v. Hillhouse* (2002) 27 Cal.4th 469, 503 [117 Cal.Rptr.2d 45, 40 P.3d 754] ["A party may not argue on appeal that an instruction correct in law was too general or incomplete, and thus needed clarification, without first requesting such clarification at trial"].) Second, CALJIC No. 2.28 does not address interrogation; it describes a pretrial exchange of information between the prosecution and the defense, and it may not reasonably be interpreted as relating to police interrogation of a defendant prior to the filing of charges or as suggesting that Saucedo had a responsibility to respond to interrogation. Third, the instruction could not have punished Saucedo for asserting his right to remain silent because Saucedo did not assert that right.

Although the above arguments are unavailing in this case, CALJIC No. 2.28 is increasingly being recognized as a problematic jury instruction, and we share these concerns. The instruction encourages speculation and offers insufficient direction. "[A]lthough the jurors [a]re told '[t]he weight and significance of any delayed disclosure are matters for your consideration,' the instruction provides no guidance on how this failure might legitimately affect their deliberations." (*People v. Bell* (2004) 118 Cal.App.4th 249, 255 [12 Cal.Rptr.3d 808]; see also *People v. Cabral* (2004) 121 Cal.App.4th 748 [17 CalRptr.3d 456].).) Jurors are "simply left to speculate, in the absence of any information, that the People were put at an actual disadvantage because of the late discovery. Further, if there were no diminution of the People's right to subpoena witnesses or present rebuttal, it is unclear how the jurors [a]re to evaluate the weight of the potentially affected testimony. Certainly, in the absence of any practical impact on the fact-finding process . . . the jurors [a]re not free to somehow fashion a punishment to be imposed on [the defendant] because his lawyer did not play by the rules." (*People v. Bell*, at p. 255.) We see no

solution to this problem other than allowing the offending party to offer evidence and explain to the jury the circumstances of its noncompliance with the discovery requirements, as well as permitting all parties to present evidence and argue whether any prejudice resulted from the discovery violation. The resultant mini-trials on issues of little to no relevance to the substantive issues at trial, however, would present a serious risk of distracting the jury from deciding the case on its merits.

More fundamentally, we question the appropriateness of injecting matters of compliance with pretrial procedure rules into the jury's evaluation of the evidence and deliberations on substantive offenses. Section 1054.5, subdivision (b) permits the court to "advise the jury of any failure or refusal to disclose and of any untimely disclosure," but CALJIC No. 2.28's intimation that the opposing party was deprived of the ability to meet the belatedly disclosed evidence, its exhortation to the jury to consider the weight and significance of the late disclosure without guidance in that task, and its suggestion that the discovery violation is to be considered "against" the defendant far exceed the statute's limited authorization to "advise" the jury of a discovery violation. Although the overall system of reciprocal discovery was declared constitutional in *Izazaga v. Superior Court* (1991) 54 Cal.3d 356 [285 Cal.Rptr. 231, 815 P.2d 304], neither the broad language of CALJIC No. 2.28 nor the propriety of ordering violations of the discovery statutes to be considered in the jury's evaluation of the evidence presented at a criminal trial has yet been addressed by the Supreme Court.

■ Regardless of our reservations about CALJIC No. 2.28, its use was harmless here because it was merely a vehicle for credibility challenges that would have been made even in the absence of the instruction. The prosecutor focused on the last-minute nature of the alibi rather than the discovery violation and made it clear that the witnesses, not Saucedo or his counsel, were the focus of his criticisms. He said, "You know, you have to consider, I think, and that's why I kept asking everybody, you know, when—when did you find out about when this occurred and why didn't you come forward and say it couldn't have happened because he was with me. That's very important. To wait to the last minute is kind of strange." On rebuttal, the prosecutor said, "I am not taking a shot at the lawyers, okay, about not providing discovery, about the witnesses. Come on. The witnesses. It's not Mr. Borges [Saucedo's trial counsel]. Who gets the case and interviews people and finds out and does his thing and what he is supposed to do. It's the people who testify, the people who have a reason to come forward before that time. Those are the people that I am asking you to evaluate. It's their credibility that's in issue, not [defense counsel]." He said, "Alibi witnesses[,] you would expect them to step up to the plate and come forward earlier. You would expect something more. That's why I referred to them as 11th hour witnesses . . . ."

Whether or not CALJIC No. 2.28 had been given, Saucedo's last-minute alibi and his witnesses were a credibility gold mine for the prosecution. Any prosecutor would have had a field day with Saucedo's implausible testimony that he agreed to undergo interrogation but did not tell the police his alibi because he "just didn't." No prosecutor would fail to exploit Hortencia Saucedo's testimony that although she learned why her son was arrested in September 2002 and she attended the preliminary hearing in October 2002, she nonetheless waited until just weeks before the March 2003 trial to come forward with information that would clear her son. The timing of Teresa Saucedo's announcement that she could corroborate Saucedo's eleventh-hour alibi was similarly vulnerable to attack. These credibility weaknesses would have been argued even if the jury had not been instructed with CALJIC No. 2.28, for CALJIC No. 2.20 directed the jury to consider "anything that has a tendency to prove or disprove the truthfulness of the . . . witness." (See, e.g., *People v. Tauber* (1996) 49 Cal.App.4th 518, 524–525 [56 Cal.Rptr.2d 656] ["the fact a witness is aware of the potentially exculpatory nature of facts but fails to reveal that evidence to the authorities before trial is relevant to the witness's credibility. While there may be no legal obligation to come forward, it is so natural to do so that the failure to promptly present that evidence makes suspect its later presentation at trial"].)

In sum, it was not CALJIC No. 2.28 that made the alibi defense implausible but its inexplicable materialization a mere three weeks before trial. Not only did Saucedo's alibi suddenly surface—like Botticelli's Venus emerging fully formed from the sea—but it also appeared with two family member witnesses telling an identical story, and no one satisfactorily explained the failure to come forward with this exculpatory evidence sooner. Under these circumstances, Saucedo cannot establish any prejudice from the use of CALJIC No. 2.28.

II.–V.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## · DISPOSITION

The judgment is affirmed.

Johnson, Acting P. J., and Woods, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 27, 2004. Kennard, J., was of the opinion that the petition should be granted.