Filed 6/27/13  P. v. White CA2/3

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>NICKLAS ANTHONY WHITE,<br><br>    Defendant and Appellant. | B236536<br><br>(Los Angeles County<br>Super. Ct. No. BA364552) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Drew E. Edwards, Judge.  Reversed in part; affirmed in part.

Sylvia Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Carl N. Henry, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury found defendant and appellant Nicklas Anthony White guilty of carjacking and of receiving stolen property. Based on the victim's surprise testimony that the carjacker had a red mohawk like defendant, defendant contends that his discovery rights and right to a fundamentally fair trial were violated. We disagree with that contention. But we do agree that his conviction of receiving stolen property must be reversed, because he cannot be convicted of stealing and receiving the same property. We therefore reverse the judgment in part and affirm in part.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      Factual background.

#### A.      *Prosecution's case.*

On November 11, 2009, around 1:00 p.m., Denise Alica Taylor and her friend, Dylon Downer, were at Milton's restaurant on Slauson Avenue in Los Angeles. When Taylor returned to her car to get some fliers, she noticed defendant getting out of the passenger side of a black Chrysler. As Taylor was closing her car door, a voice beside her said, " 'Give me your mother-fucking keys.' " Turning, she saw defendant standing a foot away and pointing something covered with a T-shirt at her. Defendant threw off the shirt, revealing a gun.

Taylor threw her keys into the air and ran into the restaurant. When she and Downer went back outside, her car and the black Chrysler were headed westbound on Slauson. Downer saw the drivers of Taylor's car and the black Chrysler talking before they drove away. Taylor had left her cell phone and $280 in the front drink compartment. She left her purse, which contained a checkbook, credit cards, identification, bible and journal, in the backseat.

Taylor called 911and described the carjacker as a Black male wearing all black clothing. Officer Brett Ehring and his partner arrived at the scene. Officer Ehring put out an initial crime broadcast describing the suspect as a Black male, about 20 years old, with a dark complexion and bad teeth. After Taylor calmed down, she gave a further description of the suspect: he had a black and red mohawk and a Jamaican accent.

2

Officer Ehring broadcast that information as well. When Officer Bret Banachowski arrived at the scene, officers told him that the suspect was a Black male with a dark complexion, bad teeth and a red mohawk.[1]

Barbara Gentle was across the street from Milton's when Taylor was carjacked. She saw Taylor's car leave Milton's and head west on Slauson. She did not see the driver.

Within 30 minutes of the crime, Officer Banachowski found Taylor's car, abandoned, at 52nd Street and Ninth Avenue. No prints were lifted from the car. Based on searches for Taylor's cell phone, Officer Banachowski was directed to a motel, where he found defendant in one of the rooms.[2] Several women were in the room with defendant, and Officer Orlando Diaz saw defendant pass a gun partially hidden inside a glove to one woman. The woman told the officer that she didn't know defendant was going to give her the gun. Defendant had Taylor's cell phone in his pocket.

Later that night, Taylor was taken to a field show-up at a hotel parking lot, where she identified defendant as the carjacker. She also identified defendant at trial as the man who carjacked her. All of Taylor's possessions were returned, except for the $280.

B.      *Defense case.*

Defendant's friend, Christine Denise Jackson, testified that on the day of the carjacking he was with her and his girlfriend all day at his girlfriend's shop. A woman named Meeka was also there, but Jackson became upset when she saw that Meeka had a gun.

Defendant also testified that he was at his girlfriend's store all day. He did not steal Taylor's car. For $75, he bought Taylor's cell phone from two crack addicts who came into the store. They always came into the store, and defendant wanted to help them

---

[1]      Officers did not obtain surveillance footage from the restaurant's video camera.

[2]      Officer Diaz described defendant's hair as a "fohawk," "where they shave the hair down and then it's the lowered part here and it was red."

3

out by buying the phone. At the motel, he did not hand a gun to Meeka. The gun was Meeka's.

## II.    Procedural background.

On May 6, 2011, a jury found defendant guilty of: count 1, carjacking (Pen. Code, § 215, subd. (a))[3] and found true gun-use allegations (§§ 12022.53, subd. (b), 1203.06, subd. (a)(1)), and count 2, receiving stolen property (§ 496, subd. (a)) and found true a gun allegation (§ 12022, subd. (a)(1)).

On September 28, 2011, the trial court sentenced defendant on count 1, to three years plus ten years for the gun-use enhancement. The court imposed but stayed under section 654 a 16-month sentence on count 2.

## DISCUSSION

## I.    Admitting evidence of defendant's red mohawk did not lead to reversible error.

Defendant contends that the trial court should have instructed the jury with CALCRIM No. 306[4] regarding untimely disclosure of evidence. He alternatively contends that admitting evidence of the red mohawk rendered his trial fundamentally unfair. We disagree.

---

[3]     All further undesignated statutory references are to the Penal Code.

[4]     CALCRIM No. 306 provides, in part: "Both the People and the defense must disclose their evidence to the other side before trial, within the time limits set by law. Failure to follow this rule may deny the other side the chance to produce all relevant evidence, to counter opposing evidence, or to receive a fair trial. [¶] An attorney for the (People/defense) failed to disclose: [¶] _____ <describe evidence that was not disclosed> [within the legal time period]. [¶] In evaluating the weight and significance of that evidence, you may consider the effect, if any, of that late disclosure." (See generally, *People v. Riggs* (2008) 44 Cal.4th 248, 307-311 [discussing criticism of instructions on untimely disclosure of evidence]; *People v. Bell* (2004) 118 Cal.App.4th 249, 255-257 [instructing on untimely disclosure was prejudicial error]; *People v. Saucedo* (2004) 121 Cal.App.4th 937 [criticizing instruction on untimely disclosure as speculative and offering insufficient direction, but finding that giving it was harmless error].)

4

A.      *Additional facts.*

During his opening statement, defense counsel argued that his client was innocent, because Taylor did not describe the carjacker as having a red mohawk, which defendant had at the time of the events: "The evidence is going to show that when the alleged victim spoke to police, she said that the man had black hair. The evidence will show that [defendant] that day, he had black hair on the sides, and he has about a 3- or 4-inch mohawk in red running down the top of his head. The victim never described that. [¶] . . . [¶] When [defendant] was arrested, the police took a booking photo. Look, there is barely any hair on the sides. And at the top, although this is not a great picture, you see a red mohawk. [¶] The evidence will show that [defendant] is not the person that committed these alleged crimes. [¶] . . . [¶] He's not the guy. He doesn't fit the description. He's not 19 years old. He has a mohawk. The robber didn't have a mohawk."

Taylor, the victim, was the People's first witness. While cross-examining Taylor, defense counsel asked, "When the police asked you of anything odd about the person's face, you told them there was nothing odd about his face; true?" Taylor answered that she told officers the suspect had a "unique hairdo like a mohawk or something." "He had a little mohawk going." She didn't mention the mohawk in prior testimony because she wasn't asked.[5]

Defense counsel objected and asked that evidence of the mohawk be excluded because it had never been provided in discovery. The prosecutor represented that the mohawk was "new to me," and she agreed it was not mentioned in the police reports or at the preliminary hearing. After Taylor testified, the prosecutor spoke to one of the officers who would be testifying, and he confirmed he was told to look for somebody with a red mohawk.

---

[5]      Taylor also said that before she identified defendant at a field show-up, she was shown four other men at four different field show-ups. The defense, however, had not been given discovery about those other field show-ups.

5

The trial court accepted the prosecutor's representation she had no knowledge of the evidence, and therefore the court refused to exclude it, finding that a discovery violation had not occurred under section 1054.1. The court also denied the defense's request for an instruction that the evidence had not been turned over and should be viewed with skepticism. The court did, however, order the prosecutor to make the officers having knowledge of the evidence available to defense counsel before testifying.

Thereafter, Officer Banachowski testified that when he arrived at Milton's restaurant he was advised the suspect was a Black male with a dark complexion, bad teeth and a red mohawk.

Defense counsel then renewed his objection, because he had learned that the prosecutor was trying to obtain radio calls referencing the red mohawk. Counsel argued that there had been a plea offer before trial, and based on the evidence then known to him, defense counsel advised his client. "And now they bring in all of this new evidence which was—which we were not privy to. I mean, I think—I think to proceed in this fashion interferes with the attorney-client relationship and, again, it fundamentally deprives [defendant] of a fair trial." Defense counsel therefore asked for a mistrial. The trial court again found that there had been no discovery violation and denied the mistrial motion.

Officer Ehring then testified that after the victim calmed down, she added that the carjacker had a black and red mohawk and a Jamaican accent.

B. *Admitting evidence of the red mohawk did not require a limiting instruction, and it did not render the trial fundamentally unfair.*

The trial court neither abused its discretion by refusing to give an instruction to address any discovery violation nor were defendant's due process rights violated.

Section 1054.1, the reciprocal discovery statute, " 'independently requires the prosecution to disclose to the defense . . . certain categories of evidence "in the possession of the prosecuting attorney or [known by] the prosecuting attorney . . . to be in the possession of the investigating agencies." ' " (*People v. Verdugo* (2010) 50 Cal.4th 263, 279-280; see also *People v. Zambrano* (2007) 41 Cal.4th 1082, 1133, overruled on

6

another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *In re Littlefield* (1993) 5 Cal.4th 122, 135 [prosecutorial obligation to disclose relevant materials includes information within the prosecution's possession and control and information reasonably accessible to the prosecution].) Evidence subject to disclosure includes "any '[r]elevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial' " and any exculpatory evidence. (*Verdugo*, at p. 280; § 1054.1, subds. (f) & (e).) " 'Absent good cause, such evidence must be disclosed at least 30 days before trial, or immediately if discovered or obtained within 30 days of trial.' " (*Verdugo*, at p. 280; § 1054.7; *Zambrano*, at p. 1133.) If any party fails to comply with the statutory disclosure requirements, the trial court "may make any order necessary" to enforce these provisions, "including, but not limited to, [ordering] immediate disclosure, [initiating] contempt proceedings, delaying or prohibiting the testimony of a witness or the presentation of real evidence, continu[ing] . . . the matter, or any other lawful order. Further, the court may advise the jury of any failure or refusal to disclose and of any untimely disclosure." (§ 1054.5, subd. (b); see also *Verdugo,* at p. 280.)

We review a trial court's decision whether to give an instruction concerning a discovery violation for an abuse of discretion. (*People v. Ayala* (2000) 23 Cal.4th 225, 299.) A violation of the discovery statutes is subject to the harmless-error standard in *People v. Watson* (1956) 46 Cal.2d 818, 836, and therefore reversal is required only where it is reasonably probable that the omission affected the outcome at trial. (*People v. Zambrano, supra,* 41 Cal.4th at p. 1135, fn. 13.)

Here, evidence the carjacker had a red mohawk was not disclosed to the defense. It was not mentioned in Taylor's 911 call, in the police reports or at the preliminary hearing. The first time it was mentioned during trial was in defense counsel's opening statement. He said that Taylor's failure to describe her assailant as having a red mohawk showed that defendant did not commit the carjacking. Taylor undercut that defense

7

when, on cross-examination, she testified that the carjacker had a red mohawk and that she told police officers about it.**6**

Section 1054.1 requires disclosure of information the prosecutor possesses or *knows* to be in the possession of investigating agencies. The prosecutor here represented that she did not possess this information before Taylor testified and that she did not know the investigating officers had any knowledge of it. It was "new" information to her. The trial court accepted her representation, and the record supports it. The police reports, the 911 call, and Taylor had not previously mentioned a red mohawk. Officer Banachowski testified that the day of his trial testimony was when he first mentioned the mohawk to the prosecutor. Given this record and the standard of review—an abuse of discretion— we cannot disregard the court's finding that the prosecutor did not know of the evidence; hence, she did not violate the criminal discovery statutes. If there was no discovery violation, then there was no duty to instruct the jury on untimely discovery.

Nor can we find that the surprise disclosure of that evidence and its admission, even if erroneous, violated defendant's due process rights under the Sixth and Fourteenth Amendments and rendered the trial fundamentally unfair. " 'Ordinarily, even erroneous admission of evidence does not offend due process unless it is so prejudicial as to render the proceeding fundamentally unfair.' . . . [¶] 'To prove a deprivation of federal due process rights, [a defendant] must satisfy a high constitutional standard to show that the

---

**6** We reject the Attorney General's suggestion that defense counsel "opened the door" to the admission of evidence of the red mohawk simply because the evidence was first elicited during his cross-examination of Taylor. Defense counsel stated in his opening that defendant was not the carjacker, and he would establish this by evidence the victim never described her assailant as having a red mohawk. To establish that defense, defense counsel asked Taylor, "When the police asked you of anything odd about the person's face, you told them there was nothing odd about his face; true?" Taylor then answered that she remembered telling police officers that the carjacker had a "unique hairdo like a mohawk or something." Based on Taylor's prior testimony, the 911 call, and the police report, none of which referenced a red mohawk, it is clear that defense counsel was trying to establish that Taylor did not mention a red mohawk when describing her assailant. Under these circumstances, defense counsel did not "open the door" to the evidence in a way that excused any alleged prosecutorial error.

erroneous admission of evidence resulted in an unfair trial.' [Citation.] ' "The dispositive issue is . . . whether the trial court committed an error which rendered the trial 'so "arbitrary and fundamentally unfair" that it violated federal due process.' [Citations.]" [Citation.]' " (*People v. Covarrubias* (2011) 202 Cal.App.4th 1, 20; see also *People v. Partida* (2005) 37 Cal.4th 428, 439.)

Defendant analogizes the disclosure of the red mohawk evidence during trial to what happened in *Sheppard v. Rees* (9th Cir. 1989) 909 F.2d 1234 and in *U.S. v. Gaskins* (9th Cir. 1988) 849 F.2d 454 (*Gaskins*). The defendant in *Sheppard* was tried for murder on a theory the murder was premeditated and deliberate. (*Sheppard*, at p. 1235.) After the parties rested and the instructions were settled, the prosecutor, for the first time, requested instructions on felony murder on a theory that the murder occurred during a robbery, a crime with which the defendant was not charged. Over the defendant's objection, the trial court gave the instructions. *Sheppard* held that the right to counsel was "directly implicated." (*Id.* at p. 1237.) "That right is next to meaningless unless counsel knows and has a satisfactory opportunity to respond to the charges against which he or she must defend. Sheppard's counsel had no occasion to defend against the felony-murder theory during the evidentiary phase of the trial. This error affected the composition of the record." (*Ibid.*)

In *Gaskins*, the trial court and the parties agreed that the jury should not be instructed on aiding and abetting at the defendant's trial for possessing and manufacturing methamphetamine. (*Gaskins*, *supra*, 849 F.2d at p. 456.) But when the jury asked a question about aiding and abetting during deliberations, the court instructed the jury on aiding and abetting. (*Id.* at pp. 456-457.) *Gaskins* found that the trial court violated rule 30 of the Federal Rules of Criminal Procedure regarding instructions and that giving the aiding and abetting instruction during jury deliberations unfairly prevented the defendant's counsel from arguing against an aiding and abetting theory to the jury. (*Id.* at p. 460.)

9

What happened in *Sheppard* and in *Gaskins*, namely, failing to notify the defendant of the charges against him and precluding the defense from arguing against a theory of liability, is far different than what happened here. Here, defendant was surprised by previously undisclosed evidence at trial.**[7]** A defendant, however, is entitled to a fair trial, not a perfect one. (See generally *People v. Cunningham* (2001) 25 Cal.4th 926, 1009; *Darden v. Wainwright* (1986) 477 U.S. 168, 183 [" 'Darden's trial was not perfect—few are—but neither was it fundamentally unfair' "].) Taylor's and the officers' testimony that she described her carjacker as having a red mohawk, a fact not mentioned by Taylor in her prior testimony or in her 911 call or in the police reports, was certainly a surprise. But surprises often occur at trials: witnesses fail to appear, recant prior testimony, and recall forgotten details. Where, as here, such surprises are unaccompanied by a discovery violation or other misconduct or error, they rarely render a trial fundamentally unfair.

Although he was surprised by the evidence, defense counsel was able to aggressively cross-examine witnesses about it and, through cross-examination, suggest that the evidence was fabricated. He had Taylor, for example, review the police report to refresh her recollection whether she mentioned the mohawk to the police, and she agreed that the report did not mention a mohawk. He asked if the first time she mentioned a red mohawk was when she saw defendant at the field show-up, which Taylor denied. Officer Banachowski, during cross-examination, denied that the first time a red mohawk was mentioned was when the district attorney and detective called him. Defense counsel also asked the officer why he didn't mention the mohawk in his "daily . . . D.F.A.R. report." Counsel asked, "Isn't it true then it wasn't that you were looking for a person with a red mohawk but that you found a person with a red mohawk?" The officer testified that he remembered he was looking for a person with a red mohawk, but he admitted he never

---

**[7]**      As we have said, the trial court found that the prosecutor also had no notice of this evidence, and therefore there was no discovery violation. Nothing in this record shows that the court abused its discretion in making that finding.

produced a report mentioning that detail and no report was updated with that detail, even though defendant's hairstyle stood out.

Defense counsel similarly cross-examined Officer Ehring about his failure to mention the red mohawk in the police report. The officer explained that he did not mention it because the report was prepared before Taylor described the red mohawk and he did not update the report once she gave the additional information. When asked if the officer considered his failure to include information about the red mohawk an oversight, the officer said he wouldn't call it a failure.

Defense counsel was also given substantial leeway during his closing argument. He argued that the police had "fumble[d] this case" and "tried to walk in here and bring you new evidence." "This isn't a case where [defendant] fit the description of the suspect. This is a case where they're trying to make [defendant] fit the description of the suspect. And although the trial court did not instruct on untimely discovery, counsel essentially made that argument: "Now, what happens next in this whole process is very concerning to me and it ought to be to you. In fact, it's scary. Because you remember my opening statement and one of the issues I raised is that he couldn't be the guy because he had a red mohawk that day. And now after I say that, all of the sudden everybody wants to run in here and say, yeah, that's right, he did, the suspect had a red mohawk." "Now, in the middle of trial, we call this sandbagging, that's where you go to trial in the case and somebody tries to bring in evidence at the last minute to try to save themselves."

Counsel also cast doubt on Taylor's assertion that the carjacker had a red mohawk. Only Taylor claimed to have seen it; neither Downer nor Gentle could describe the carjacker. Taylor also didn't mention it during her 911 call, although "that would be the most distinctive thing about him." And although it would have been easy to do, Officer Ehring never updated the police report to include the red mohawk. "So why would he do that? Why wouldn't he do that? It's because it never happened."

Therefore, even though the jury was not instructed with CALCRIM No. 306 and evidence of the red mohawk was admitted, defense counsel was permitted to argue that the evidence was fabricated and not produced in a timely manner. Through cross-

11

examination and closing argument, he was able to put that possibility in front of the jury. The jury, however, may not have found the issue to be compelling, in light of the strong evidence that defendant was the carjacker; namely, defendant had Taylor's cell phone in his pocket, a fact he did not dispute at trial. That fact alone was sufficient to tie defendant to the carjacking, and therefore any error in allowing evidence that the carjacker had a red mohawk was harmless, even when measured by the federal constitutional standard of *Chapman v. California* (1967) 386 U.S. 18, 24. (See *People v. Gonzalez* (2012) 54 Cal.4th 643, 663 [*Chapman* harmless-error inquiry asks whether it is clear beyond a reasonable doubt a rational jury would have found the defendant guilty absent the error]; *Neder v. United States* (1999) 527 U.S. 1, 15 [same].)

Defendant, however, suggests that the admission of the evidence adversely impacted his constitutional rights in one additional way: had his counsel known of this evidence against him, he might have taken the seven-year-plea deal offered before trial. That may be, but, as we have said, surprises occur at trial that might make a previously rejected deal look more attractive. We therefore conclude that evidence of the red mohawk did not render defendant's trial fundamentally unfair.

## II.    Defendant could not be convicted of carjacking and of receiving stolen property.

Defendant was convicted in count 1 of carjacking and in count 2 of receiving stolen property, namely, Taylor's cell phone. He correctly contends he cannot be convicted of both. His conviction of count 2 must therefore be reversed.

Former section 496, subdivision (a), provides: "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a state prison, or in a county jail for not more than one year." But "no person may be convicted both pursuant to this section and of the theft of the same property." (See also *People v. Garza* (2005) 35 Cal.4th 866, 874.)

12

Section 496 therefore follows the general rule that a person may not be separately convicted of stealing and receiving the same property. (*People v. Garza, supra,* 35 Cal.4th at pp. 871, 874; *People v. Jaramillo* (1976) 16 Cal.3d 752, 757; *People v. Magallanes* (2009) 173 Cal.App.4th 529 [a defendant cannot be convicted of carjacking and of receiving stolen property where the property is the car stolen in the carjacking].) One thus cannot be both the thief and the receiver of the same stolen property. (*Garza,* at p. 875; *People v. Allen* (1999) 21 Cal.4th 846, 852.)

This general rule applies here. The jury found defendant guilty of count 1, carjacking. He stole Taylor's car. The cell phone was in that car. Therefore, when defendant stole the car, he also stole everything in it, including the cell phone. (See *People v. Ortega* (1998) 19 Cal.4th 686, 699 [a defendant who steals multiple items during the course of an indivisible transaction involving a single victim commits only one robbery or theft, regardless of how many items he or she steals], overruled on another ground in *People v. Reed* (2006) 38 Cal.4th 1224, 1228-1229.)

The Attorney General, however, points out that the general rule "does not apply in the uncommon situation 'when there is evidence of *complete divorcement* between the theft and a subsequent receiving, such as when the thief has disposed of the property and subsequently receives it back in a transaction separate from the original theft.' " (*People v. Garza, supra,* 35 Cal.4th at pp. 874-875.) To establish a complete divorcement, there must be a significant break in the defendant's possession and control over the stolen property. (*Id.* at p. 879.)

The Attorney General argues that the evidence here could be interpreted to show a complete divorcement between the carjacking and defendant's receipt of the cell phone based on defendant's testimony he bought the cell phone from two addict friends. The Attorney General thus posits this scenario: after carjacking Taylor, defendant left the cell phone and other items in the car and then just so happened later that day to buy the phone he left in Taylor's car from his friends. That scenario, however, was entirely speculative.

The Attorney General suggests a second way defendant's conviction of receiving stolen property can stand: if the jury believed that defendant did not drive Taylor's car away or had been inside her car, then "[u]nder that reasonable scenario, [he] could be convicted of carjacking and the receipt of the cell phone." The Attorney General's argument is unclear and no authority is cited for any specific proposition. But if the Attorney General is suggesting that defendant could be guilty of both crimes if he didn't drive Taylor's car from the crime scene and merely later met his accomplice, who then gave him the cell phone, then we would reject that argument. Based on evidence at trial, defendant and his accomplice in the black Chrysler both participated in the carjacking and therefore were equally guilty of carjacking. There was no evidence that defendant, after he and his accomplice stole Taylor's car, received the cell phone during some transaction completely separate from the carjacking.

## DISPOSITION

Defendant's conviction of count 2, receiving stolen property is reversed. The judgment is otherwise affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

CROSKEY, Acting P. J.

KITCHING, J.