[No. B173698. Second Dist., Div. Eight. Aug. 11, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY E. LAWSON, Defendant and Appellant.

COUNSEL

Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Jeffrey B. Kahan and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RUBIN, J.**—Anthony E. Lawson appeals from his conviction for possession of cocaine base. He asserts several errors relating to the manner in which his sole witness testified and how he was forced to testify. We reverse.

### FACTS AND PROCEDURAL HISTORY

Long Beach Police Officer Joseph Ferguson and his partner were on foot patrol one night dressed in civilian clothes when they saw appellant

Anthony E. Lawson and his acquaintance, Theresa Martinez. At trial, officer Ferguson testified he saw appellant trying to flag down passing drivers to sell them drugs. He further testified that as he and his partner approached appellant he offered to sell them "dope," but when they identified themselves as police, appellant threw down a piece of plastic that contained cocaine base.

The police arrested appellant and completed a field identification card on Martinez. During pretrial discovery, the People gave Martinez's field identification card to the defense, and a defense investigator interviewed her. The investigator took notes of the interview, which he described not as a "report" but instead as "impressions about my discussion with a witness rather than a report that would go to an attorney."[1] Defense counsel did not give the investigator's notes to the prosecution during pretrial discovery, and did not put Martinez's name on the defense witness list. (Pen. Code, § 1054.3 [requires reciprocal pretrial discovery].)[2]

Appellant was tried for possession of cocaine base and offering cocaine base for sale. After the prosecution rested its case-in-chief, appellant opened his defense by trying to call Martinez as a witness. Claiming surprise, the prosecutor objected because Martinez was not on the witness list, and the defense had not turned over the investigator's notes. Defense counsel explained he had not put Martinez on the witness list as he had not planned to call her because he had anticipated the officers would recant their accusations against appellant and exonerate him; when the officers stuck to their story against appellant, her testimony became necessary.

The court rejected counsel's explanation and found he had wrongfully withheld Martinez's name from the witness list. As a sanction, the court refused to let Martinez testify and ordered appellant to call his next witness. Defense counsel told the court he had not planned to call any witness other than Martinez, to which the court replied appellant could either call another witness or rest. With no one else available to describe the defense's version of events, appellant took the stand.

In his testimony, appellant admitted he and Martinez spent part of the day he was arrested smoking her crack cocaine. He further explained they smoked all of her cocaine and were on the street trying to buy more when the officers

---

[1] At the hearing on the prosecutor's motion for sanctions for defense counsel's discovery violation for not producing the notes, the investigator assiduously avoided using the word "report," prompted perhaps by defense counsel's speaking objection that there was "no report." Whatever the document's nature, if it contained a witness's statement it was presumably discoverable. If defense counsel was unsure whether to turn over the notes, his duty was to let the court decide instead of his deciding on his own to withhold them.

[2] All further section references are to the Penal Code unless otherwise indicated.

saw them. When the police approached, he did not have any drugs on him and did not offer to sell them any because their distinctive police flashlights marked them as undercover officers. Under cross-examination, the prosecutor impeached appellant with his prior convictions for petty theft, robbery, receiving stolen property, and burglary. Because trial on his prior convictions had been bifurcated, the jury ordinarily would not have heard of appellant's criminal history but for his having testified.

After appellant completed his testimony, the trial prosecutor corrected the record. The prosecution's case file revealed that a previous prosecutor in the case had known about Martinez and had given her name and field identification card to the defense, facts overlooked (or forgotten) by the trial prosecutor. Because the People had always viewed Martinez as friendly to the defense, the prosecutor had never tried to locate or interview her for trial. The long and short was the prosecutor withdrew his claim of surprise against Martinez's testimony.

The court reversed itself and let Martinez testify; it did not, however, revisit its ruling that defense counsel had improperly withheld the defense investigator's notes. Martinez told the jury she and appellant had smoked her crack cocaine the day he was arrested, but she otherwise disputed much of the officers' testimony. She testified she did not see appellant flagging down cars, as the police claimed. In addition, she did not hear him say anything to the police as they approached, and did not see him throw anything to the ground.

During closing argument, the prosecutor attacked appellant's credibility with his prior convictions. In addition, as a sanction for defense counsel's discovery violation involving the notes, the court instructed the jury with CALJIC No. 2.28. That instruction stated, "The prosecution and the defense are required to disclose to each other before trial the evidence each intends to present at trial so as to promote the ascertainment of the truth, save court time and avoid any surprise which may arise during the course of the trial. Delay in the disclosure of evidence may deny a party a sufficient opportunity to subpoena necessary witnesses or produce evidence which may exist to rebut the non-complying party's evidence . . . . In this case, the defense failed to timely disclose the following evidence: notes of Theresa Martinez's statement to the defense investigator. This failure to timely disclose evidence was without lawful justification but the Court has, under the law, permitted the production of this evidence during the trial. [¶] The weight and significance of any delayed disclosure are matters for your consideration. However, you should consider whether the untimely disclosed evidence pertains to a fact of importance, something trivial or subject matters already established by other credible evidence."

The jury acquitted appellant of offering to sell cocaine base, but convicted him of possession of cocaine base. (Health & Saf. Code, § 11350, subd. (a).) The court sentenced him to four years in state prison. This appeal followed.

## DISCUSSION

Appellant contends the court erred in its handling of Martinez's testimony. His argument assigns two mistakes to the court, one misstep rolling into the other. The court's first error, he asserts, was initially prohibiting Martinez from testifying. Its second error was instructing the jury with CALJIC No. 2.28. We agree the court erred, and because the errors were not harmless, we reverse.

The court initially barred Martinez from taking the stand based on a misapprehension of the facts: Martinez was in truth not a surprise to the prosecution. The trial prosecutor may have been unfamiliar with, or forgotten about, her, but as the prosecutor belatedly learned, the People had known about her all along. Even though the court's mistake in barring Martinez was innocent, it was a mistake nonetheless because it rested on false facts. This mistake led the court to force appellant to testify or rest his case without offering any testimony in his defense.

Appellant contends the court abused its discretion by putting his right against self-incrimination on a collision course with his right to present a defense, where one had to yield to the other. In support, he cites *People v. Cuccia* (2002) 97 Cal.App.4th 785 [118 Cal.Rptr.2d 668] (*Cuccia*). In *Cuccia*, a defense witness could not be found when it was her time to testify. The court gave the defendant the choice of testifying to fill up the rest of the trial day, or rest his case. The defendant decided to testify. The appellate court found the trial court erred, concluding it had coerced the defendant's testimony by threatening to deem his defense closed if he did not take the stand. (*Id.* at pp. 790–791.)

Respondent argues *Cuccia* is distinguishable because there the defense witness was missing through no fault of the defendant. (*Cuccia, supra,* 97 Cal.App.4th at p. 792.) Here, in contrast, Martinez was "unavailable" to testify as a sanction for misconduct by the defense in intentionally withholding Martinez's name from the witness list, catching the prosecutor by (later disavowed) surprise. We find respondent's distinction unsatisfying, however, because the misconduct was solely by appellant's lawyer; nothing in the record suggests appellant himself had a hand in Martinez's name not being on the witness list. Although other sanctions were available against defense counsel short of barring Martinez and forcing appellant to testify—and as events unfolded, barring Martinez was a precipitous sanction resting on a misapprehension of the facts—appellant paid the price for his lawyer's

decision not to name Martinez.[3] The court's belated decision to let Martinez testify remedied some of the error, but by then the damage had been done because the jury learned of appellant's four prior convictions—which leads us to the trial court's second error: instructing with CALJIC No. 2.28.

Section 1054.3 requires reciprocal pretrial discovery between the People and defense. During pretrial discovery, the parties must disclose the names of witnesses they intend to call and any written or recorded statements by those witnesses. (*Thompson v. Superior Court* (1997) 53 Cal.App.4th 480, 486 [61 Cal.Rptr.2d 785]; § 1054.3, subd. (a).) The parties need not exchange, however, attorney work product, which includes an attorney's impressions, conclusions, and opinions. (§ 1054.6; Code Civ. Proc., § 2018.030, subd. (a).) The court found the investigator's notes were discoverable documents containing Martinez's witness statement.[4]

Appellant contends the court erred in instructing the jury with CALJIC No. 2.28 for his counsel's withholding the notes. He argues the instruction's unfairness is multifaceted. First, it invited the jury to conclude his defense was based on deceit in its suggestion he tried to hide the truth from the jury. The unfairness was especially pronounced here, he argues, because any misdoing was his counsel's, not his. (*People v. Bell* (2004) 118 Cal.App.4th 249, 255–256 [12 Cal.Rptr.3d 808] (*Bell*).)[5] Second, it invited the jury to fashion a punishment of its own choosing for injury done to the prosecution, when no injury was shown and no guidance offered for appropriate punishment.

Several decisions have noted CALJIC No. 2.28 is problematic. *People v. Cabral* (2004) 121 Cal.App.4th 748 [17 Cal.Rptr.3d 456] (*Cabral*), for example, roundly criticized the instruction. *Cabral* noted that the instruction applies even when no evidence suggests the defendant was personally responsible for concealing evidence. (*Id.* at p. 751.) Moreover, the instruction

---

[3] Haste does indeed make waste. The court forced appellant to decide whether to testify without giving him and his lawyer much time to reflect. If the court had moved more deliberately, the prosecutor or defense counsel might have had the time to straighten out the misunderstanding about Martinez before any damage was done. Justice delayed is justice denied, but justice driven inexorably forward sometimes derails.

[4] Appellant contends the notes were nondiscoverable work product. The notes are not in the record, however, and therefore we cannot evaluate them ourselves. As it is appellant's obligation to provide a record sufficient to demonstrate error below, the silent record requires us to accept the trial court's characterization of the investigator's notes, and the court's conclusion that they were discoverable.

[5] Respondent attempts to distinguish *Bell* by arguing that counsel's discovery violation in that case was not an attempt to gain a tactical advantage, whereas here it was. The distinction exists, but does not override *Bell*'s holding that it is unfair to assign guilt to a defendant for his lawyer's discovery misconduct.

does not guide the jury on how to weigh the effect of concealment. Instead, it implies the jury should simply "do something" for counsel's misfeasance. (*Ibid.*)

■ *People v. Saucedo* (2004) 121 Cal.App.4th 937 [17 Cal.Rptr.3d 692] (*Saucedo*), also criticized CALJIC No. 2.28 as an improvident instruction. It noted "CALJIC No. 2.28 is increasingly being recognized as a problematic jury instruction, and we share these concerns. The instruction encourages speculation and offers insufficient direction." (*Saucedo*, at p. 942.) The *Saucedo* court explained, "we question the appropriateness of injecting matters of compliance with pretrial procedure rules into the jury's evaluation of the evidence and deliberations on substantive offenses. Section 1054.5 subdivision (b) permits the court to 'advise the jury of any failure or refusal to disclose and of any untimely disclosure,' but CALJIC No. 2.28's intimation that the opposing party was deprived of the ability to meet the belatedly disclosed evidence, its exhortation to the jury to consider the weight and significance of the late disclosure without guidance in that task, and its suggestion that the discovery violation is to be considered 'against' the defendant far exceed the statute's limited authorization to 'advise' the jury of a discovery violation." (*Id.* at p. 943.) We believe *Saucedo*'s critique is well taken. With rare exception, CALJIC No. 2.28 should not be given without providing the jury some guidance as to how it should consider the discovery violation. The form of this guidance by necessity will differ from case to case. At the very least, it should include a warning that the jury cannot infer a consciousness of guilt from the discovery violation. Such a warning was especially needed here because nothing in the record suggests appellant, as opposed to his defense lawyer, was responsible for the discovery violation; yet the instruction states it was the "defense," not "defendant's attorney," that was responsible for the nondisclosure. (See *Cabral, supra,* 121 Cal.App.4th at p. 752 ["instructions otherwise analogous to CALJIC No. 2.28 caution the jury ' "that certain types of deceptive or evasive behavior" ' by the accused are not sufficient to prove guilt but . . . CALJIC No. 2.28 conspicuously fails to do so"]; cf. CALJIC No. 2.05 [efforts by third parties to fabricate without defendant's knowledge evidence for defendant's benefit may not be used as consciousness of guilt] with CALJIC No. 2.06 [defendant's personal effort to conceal evidence may be considered consciousness of guilt].)

In the wake of *Saucedo, Cabral,* and another decision that also roundly criticized CALJIC No. 2.28, *Bell, supra,* 118 Cal.App.4th 249, California is pushing No. 2.28 aside to make way for a better instruction. The Judicial Council Task Force on Jury Instructions, slated for publication in January

2006, replaces No. 2.28 with a more narrowly and carefully written instruction. (See Task Force Instruction 306.) The comment to the new instruction notes No. 2.28's shortcomings, particularly its undermining of a defendant's right to a fair trial by attributing an attorney's malfeasance to the defendant. And the new instruction arrives with a solid pedigree: The chair of the task force sponsoring the instruction was the authoring justice of *Bell*. Given the flow of events against CALJIC No. 2.28, we are confident that upon retrial, the trial court will not use the instruction again.[6]

The court's mistakes in initially barring Martinez from testifying, and then instructing with CALJIC No. 2.28, were not harmless.[7] This was a close case turning on witness credibility. Appellant's druthers was to have Martinez testify without his taking the stand. She could have established his defense without Martinez paying the price of the jury learning of his prior convictions. The jury found neither the police nor the defense wholly credible: It disbelieved the officers' testimony that appellant offered to sell them cocaine base, but it also disbelieved appellant's protestations of complete innocence. But in this battle of credibility, appellant's side was likely grievously wounded when the jury learned of his prior convictions; indeed, the *very purpose* of such impeachment is to encourage the jury to be suspicious of appellant's truthfulness because he was a former felon. Moreover, the prosecutor, as was within his right, argued to the jury that appellant's testimony was inherently unreliable because of "all the prior convictions that he has had of moral turpitude crimes . . . ." And, finally, when one adds CALJIC No. 2.28's inappropriately ascribing to appellant his lawyer's withholding of evidence, we find it more likely than not that, but for the court's errors, appellant would have achieved a more favorable result at trial.

---

[6] Indeed, it is unclear whether on retrial any sanction for defense counsel's discovery violation would be appropriate. The People are now aware (or re-aware) of Martinez and the investigator's notes, making defense counsel's discovery violations before the first trial irrelevant to a retrial.

[7] The test for harmless error in instructing with CALJIC No. 2.28 is *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], which asks whether it is reasonably probable appellant would have achieved a more favorable result if the court had not given the instruction. (*Cabral, supra,* 121 Cal.App.4th at p. 753.) Which test for harmless error applies to the court's initial exclusion of Martinez's testimony arguably depends on how narrowly or broadly one describes the court's error. Defined narrowly, the court merely excluded the testimony of one witness, and the erroneous exclusion of evidence is ordinarily reviewed for harmless error under *Watson*. Defined more broadly, however, excluding Martinez put appellant to the Hobson's choice of testifying himself or foregoing any defense because he and Martinez were the only nonpolice witnesses to his dealings with the officers when they approached him. Preventing a defendant from putting on a defense, or undermining a defendant's right not to testify, arguably rises to the level of constitutional error, which is ordinarily subject to the harmless beyond a reasonable doubt test of *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]. (*Cuccia, supra,* 97 Cal.App.4th at p. 791.) As we explain in the text, under either test, the court's error was not harmless.

## DISPOSITION

The judgment is reversed.

Cooper, P. J., and Flier, J., concurred.