Filed 8/27/13  P. v. Guy CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D061686 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN262049) |
| MICHAEL GUY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Harry M. Elias, Judge.  Affirmed.

Carl Fabian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steven T. Oetting and Michael P. Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Michael Guy of numerous counts of robbery arising out of three commercial armed robberies that took place in May 2009.

(Pen. Code,[1] §211; counts 1-4, 9-11.)  The jury also convicted Guy of related counts of false imprisonment of employees at the stores.  (§§ 236 & 237, subd. (a); counts 6-8, 13-15.)  As to each conviction, it was found true that Guy personally used a firearm within the meaning of sections 12022.5, subdivision (a) and 12022.53, subdivision (b).  However, Guy was acquitted of two counts of kidnapping employees for robbery.  (§ 209, subd. (b)(1); counts 5, 12.)

After a court trial, all the prior conviction allegations against Guy were found true.  (§§ 667.5, subd. (b) & 668, prison priors; §§ 667, subd. (a)(1), 668 & 1192.7, subd. (c), serious felony priors & strike priors, §§ 667, subds. (b)-(i), 668 & 1170.12.)  The court sentenced Guy to a prison term of 105 years to life, and he appeals.

At trial, the jury heard evidence on the charged robbery offenses, and also a fourth, uncharged robbery.  Guy presented a defense of duress by a fellow participant in three of the four robberies.  On appeal, he contends the trial court prejudicially erred by admitting evidence of the uncharged robbery for purposes of proving his intent to rob and the existence of a common plan, as well as motive and identity.  Guy contends that the claimed similarities between the uncharged robbery and the charged offenses were not sufficiently distinctive to be admissible to prove identity, intent, or a common plan.  He further seems to argue the evidence of the three sets of charged offenses should not have been allowed cross-admissibility.

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

Guy's claims are not supported by the record and we affirm the judgment of conviction.

I

*INTRODUCTION: MAY 16, 2009, ROBBERY OF ENCINITAS CVS PHARMACY*

On May 16, 2009, Guy was arrested in connection with a robbery at an Encinitas CVS pharmacy. Around 2:00 a.m. on May 16, 2009, he and another man entered the store and demanded that an employee open the store safe. One man wore a mask and carried a silver gun. The employee opened the cash registers and the two robbers took money. They took two other employees to the back of the store and duct taped their hands and/or ankles, and then took the first employee there and restrained him.

While leaving the store through the emergency exit, Guy and his companion triggered an alarm. Although Guy attempted to escape, the car taking him from the scene crashed. Police apprehended Guy, but not his companion. Police searched the car and found a revolver, cash, a cell phone, and some CVS products with security devices on them.

Guy told investigators that he and a friend had entered the store to buy liquor, but decided to take it. When confronted, he decided to commit the robbery.

After being in jail for a day, Guy called his family and asked them to call police to reinterview him, and he explained that he had been coerced by Lawrence Humes into participating in not only the Encinitas CVS robbery, but also another CVS robbery and an AutoZone robbery on May 15.

3

Investigation disclosed that Guy's cell phone records placed him near the Encinitas CVS pharmacy around the time of the robbery. Guy's cell phone had a missed call from Humes. The police found Humes about a week later and arrested him at a hotel room, where they found he had a silver revolver.

At trial, none of the employees was able to identify Guy as one of the robbers. (Counts 9-15.)

II

*ADDITIONAL CHARGED AND UNCHARGED OFFENSES*

A. May 4, 2009, Kragen Auto Store Charged Offense

Evidence presented at trial showed that at closing time on May 4, 2009, Guy entered the Kragen Auto Parts store on Convoy Street and asked for a product. One of the employees helped Guy while the other went to the store's back room. Suddenly, Guy pulled a gun on the employee who was helping him and demanded money from the cash register. After obtaining $420, Guy demanded that the employee open the safe. When the employee said he did not have the combination, Guy left, telling the employee not to look at him. Guy was wearing a black hooded sweatshirt. Neither employee looked outside or saw any accomplice. Both employees identified Guy in a line-up and in court.

Investigation of cell phone records showed calls near the Kragen store were made from both Guy's cell phone and Humes's cell phone, at around the time of the robbery. (Count 1.)

4

B. May 15, 2009, AutoZone Store Charged Offenses

Evidence presented at trial showed that at closing time on May 15, 2009, two armed robbers entered a Mira Mesa AutoZone store after it closed for the night. The robbers had a silver revolver and possibly another gun. They found three employees, tied up two of them with "zip ties" and duct tape, and then had the third employee open the safe. They took money and then tied up the third employee.

At trial, the employee who had opened the safe was able to identify the robbers as the same people in store surveillance photographs, but in court, he was unable to identify Guy as one of them. Another employee was able to identify Guy in court as one of the robbers. Cell phone records showed Guy's cell phone was active near the AutoZone store at around the time of the robbery. (Counts 2-8.)

C. May 5, 2009, CVS Pharmacy in Murrieta (Uncharged Offenses)

Evidence presented at trial showed that at around 2:00 a.m. on May 5, 2009, Guy and a companion arrived at a CVS pharmacy in Murrieta. Going inside, they showed an employee a silver revolver, and told her to give them money from the registers and a safe, which she did (approximately $6,000). As she cried, Guy tied her up with duct tape, next to another restrained employee. Guy and his companion left.

Both women employees identified Guy in court, and said he had been wearing a black hooded sweatshirt. Telephone records placed Guy's and Humes's cell phones near the Murrieta CVS pharmacy at around the time of the robbery.

## III

*PRESENTATION AT HEARING ON MOTION IN LIMINE*

Before the jury was selected, the court heard the prosecutor's motion in limine seeking to introduce testimony about other robberies against different stores and employees, to prove a common scheme or plan, to show identity, and to establish intent. (Evid. Code, § 1101, subd. (b).) This evidence would include the three charged offenses and also the uncharged robbery on May 5, 2009, at the Murrieta CVS pharmacy.[2]

Because the trial court had to make a discretionary decision before trial on whether to admit such "other crimes" evidence, we evaluate its exercise of discretion by considering the record before the trial court when it made its ruling. (*People v. Lewis* (2001) 25 Cal.4th 610, 637; *People v. Lindberg* (2008) 45 Cal.4th 1, 23 (*Lindberg*); see *Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1220 (*Alcala*).) We examine the grounds offered by the prosecutor in the motion and at the argument. First, the prosecutor referred to the "striking similarities" between the four sets of offenses, as establishing a common scheme or plan, showing identity, and establishing intent. The prosecutor intended to argue to the jury that the entire body of evidence to be presented about both the charged and uncharged crimes evidence was probative of the charged counts.

At the hearing, the prosecutor argued that both robberies of auto parts stores occurred around 9:00 p.m. at closing time, and both CVS robberies occurred a few hours

---

[2]    The Murrieta robbery was being prosecuted separately in Riverside County.

later, around 2:00 a.m. on the following day. The robber's clothing (black hooded sweatshirt) appeared to be similar in the security videos from the Kragen auto parts store and the Murrieta CVS pharmacy. Also, in the other two-person robberies, the perpetrators used the same modus operandi as in the Murrieta CVS robbery, by apprehending the employees, duct taping them, putting them in a certain place in the store, taking one to the register for pulling money out, and then taking off. The prosecutor argued that the evidence of the uncharged Murrieta CVS robbery would not unduly consume court time, because only two witnesses were needed. The prosecutor also referred in argument to the cell phone data that placed both Guy and Humes at the site of the first auto parts store robbery, as well as near the next three robberies.

At the hearing, defense counsel objected to the admission of the uncharged Murrieta CVS robbery evidence, as creating a trial within a trial, being highly prejudicial and unnecessary for this particular case. The court then ruled that the Murrieta CVS robbery evidence would be admissible under Evidence Code section 1101, subdivision (b) as it went to motive and modus operandi, as well as identity. With respect to the three charged offenses, the court found that cross-admissibility was proper because of the similarity of the fact pattern and timing, to show motive and identity.

As we will further discuss, even though the prosecutor had orally argued that the trial court could take into account the cell phone evidence and the evidence of Guy's similar clothing as seen on two of the surveillance videos, the trial court's ruling does not expressly mention those criteria as supporting admission of the uncharged offense evidence or cross-admissibility. Nor did the ruling expressly mention the establishment

7

of intent as a ground for admission of the evidence of other offenses, although the prosecutor had argued that theory as well. (See *People v. Ervine* (2009) 47 Cal.4th 745, 779 (*Ervine*) [to be cognizable on appeal, a theory of admissibility must have been presented at trial; alternatively, the basis for it must be in the record].)

## IV

### *THE DEFENSE CASE; VERDICT; JUDGMENT*

At trial, Guy testified that he owed Humes money for a failed drug production deal. Humes threatened to harm Guy and his family unless Guy participated with him and another man in three of the robberies. Even though Guy unwillingly participated, he did not intend to rob the employees or the stores.

After instructions and deliberations, the jury convicted Guy of all the robbery charges and those of false imprisonment. The court found true the prison and strike priors and sentenced Guy to a total term of 105 years. He appeals.

## V

### *ISSUES PRESENTED*

#### A. Applicable Legal Principles

Evidence Code section 1101, subdivision (b), authorizes admission of evidence of uncharged crimes to prove some fact, other than propensity, "such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . . ." (*Ibid.*; Evid. Code, § 1101, subd. (a) [prior criminal act normally not admissible to prove conduct].) The admissibility of uncharged crimes depends on: " '(1) the materiality of the facts sought to be proved, (2) the tendency of the uncharged

8

crimes to prove those facts, and (3) the existence of any rule or policy requiring exclusion of the evidence.' " (*People v. Kelly* (2007) 42 Cal.4th 763, 783; *People v. Ewoldt* (1994) 7 Cal.4th 380, 402 (*Ewoldt*).)

Circumstances in which evidence of uncharged crimes may properly be admitted are described in *Lindberg, supra,* 45 Cal.4th 1, 23:  "When the prosecution seeks to prove the defendant's *identity* as the perpetrator of the charged offense with evidence he had committed uncharged offenses, the admissibility of evidence of the uncharged offenses turns on proof that the charged and uncharged offenses share sufficient distinctive common features to raise an inference of identity.  A lesser degree of similarity is required to establish the existence of a *common plan or scheme* and still less similarity is required to establish *intent*.  [Citations, including *Ewoldt, supra,* 7 Cal.4th 380, 402-403.]"  (Italics added.)

In evaluating the admissibility of "other crimes" evidence on the issues of identity, motive and intent, a trial court must "carefully review each count in light of the alleged 'other crimes' evidence to determine its probativeness to prove a material fact other than criminal disposition and then . . . weigh its probative value against its prejudicial effect before it is admitted."  (*People v. Armstead* (2002) 102 Cal.App.4th 784, 793-794; Evid. Code, §§ 1101, subd. (b), 352; *Ewoldt, supra,* 7 Cal.4th at p. 404.)[3]

---

3    Evidence Code section 352 provides:  "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, or confusing the issues, or of misleading the jury."

9

The weighing process under Evidence Code section 352 "depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon the mechanical application of automatic rules." (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314.) We review the trial court's rulings in this context for any abuse of discretion. (*People v. Lewis*, *supra*, 25 Cal.4th 610, 637; see *Alcala, supra*, 43 Cal.4th 1205, 1220 [an evaluation of a trial court's exercise of discretion considers the record before it when the ruling was made].)

### B. No Forfeiture of Appellate Claims

Guy challenges his convictions by arguing the trial court erroneously allowed admission of evidence about the uncharged robbery, because the similarities between it and the charged robberies were not sufficiently distinctive to show identity, intent, or a common plan, and only generic similarities were shown: e.g., the use of duct tape to restrain employees and the hour of the day when the robberies occurred. (Evid. Code, § 1101, subd. (b); see *People v. Rivera* (1985) 41 Cal.3d 388, 393 ["signature" acts required].) Guy points out that zip ties were used in only one of the four robberies, and a mask was used in only one of the four robberies. He claims the uncharged offense was particularly inflammatory evidence, since the employees in that case were women and one of them cried during the ordeal. (*Ewoldt, supra,* 7 Cal.4th at pp. 404-405.)

Guy asserts his counsel's objections were adequate to protect his right to appeal (i.e., creating a trial within a trial, being highly prejudicial, unnecessary for this particular case). If those objections were not adequate, he argues we should examine the appellate issues under a Sixth Amendment assistance of counsel analysis.

10

In response, the Attorney General appears to concede that the defense objection below was adequate to preserve the issues for appeal, but argues that in any case, there was no error, or any error was harmless. We agree that although the objection was quite general in nature, the parties and the trial court were well aware of the nature of the problem and had all the necessary tools to analyze it. There is no justification for treating this as a forfeiture case, and we look at its merits.

## C. Scope of Review

Guy strenuously argues that the trial court's ruling does not expressly mention the establishment of intent as a ground for admission of the evidence of other offenses, and therefore the ruling cannot be upheld on that ground. Guy also objects to any consideration of the cell phone evidence and the evidence of Guy's similar clothing as seen on two of the surveillance videos, as supporting admission of the uncharged offense evidence, again because the ruling does not expressly rely on those grounds. (See *Ervine*, *supra*, 47 Cal.4th 745, 779 [to be cognizable on appeal, a theory of admissibility must be presented at trial, or at least a basis for the theory must be apparent in the record].)

Alternatively, Guy seems to make some kind of instructional error argument (without calling it that), by contending that the jury was given CALCRIM No. 375 on the proper usage of evidence of an uncharged offense to prove identity, intent, etc., and this somehow served to expand the purposes for which the uncharged offense evidence could properly be used. The record does not include any specific objection to the language including intent in this jury instruction. Guy argues that the trial court's in limine ruling must be restricted to its original grounds, motive and identity, and any additional use of

11

the uncharged offenses to prove intent would be improper. However, he also admits that the trial court's decision is reviewed on appeal based on the facts known to the trial court when the ruling was made. (See *People v. Lawson* (2005) 131 Cal.App.4th 1242, 1249 [potential effect of evidentiary error upon a defendant's decision to testify].)

On appeal, most of Guy's argument deals with the uncharged crimes evidence, and it is not entirely clear from the briefs whether he continues to object that the trial court should not have allowed the evidence about the three charged robberies to be cross-admissible, for proving one another. On both types of evidence, the prosecution's motion in limine presented the trial court with several theories of admissibility, common scheme or plan, identity, and intent. The prosecutor argued for admissibility of the entire body of evidence that would be presented, both the charged and uncharged crimes evidence, as probative of the charged counts (due to "striking similarities" between the four sets of offenses). Moreover, the prosecutor orally argued the probative effect of the similarity of the cell phone data that was related to the various charges, as well as the similarity of clothing in the surveillance videos. There is no indication the trial court rejected those criteria in making the ruling. Instead, the court expressly relied on the explanation given by the prosecutor, while designating the "most significant factor" as the similarity among the various fact patterns and timing of the various offenses, to prove modus operandi and motive.

We consider the grounds expressly relied upon in the ruling but additionally, are not foreclosed from considering the trial court's exercise of discretion at that time in light of all the theories presented to it, which clearly included intent. As the trial progressed,

12

Guy's defense of duress further highlighted the issue of his intent during the incidents. In any event, there was an adequate basis in the record for each of those theories of admissibility. (*Ervine*, *supra*, 47 Cal.4th 745, 779.)

Moreover, Respondent's brief essentially concedes that the theory about a common scheme or plan is not as strong as the identified grounds for admission, identity and motive. (*Ewoldt, supra,* 7 Cal.4th 380, 402-403 [lesser degree of similarity among the uncharged and charged acts required for common scheme or plan].) We need only address in detail the purposes of proving identity and intent as justifications for admissibility of this evidence.

VI

*ANALYSIS*

A. Identity

The prosecutor argued the evidence was admissible to prove identity under Evidence Code section 1101, subdivision (b), because the crimes shared numerous distinctive features that were similar. On appeal, Guy argues the crimes were not identical and involved only a series of extremely generic acts (duct tape use, timing of robberies) that in no way constituted "signature" acts that would have identified a single perpetrator. (*People v. Rivera*, *supra*, 41 Cal.3d 388, 393.) Moreover, the Kragen robbery was unique because only a lone man committed it, without a mask and without restraining any employees. The Mira Mesa AutoZone robbery by two men did not involve a mask and uniquely involved zip ties, as well as duct tape. The Encinitas CVS

13

robbery uniquely involved a mask or bandanna. The Murrieta CVS robbery was different because there were female victims.

Nevertheless, both the uncharged offenses and the charged acts involved robbery at gunpoint and moving employees around, to obtain money from store registers or safes, and three out of four incidents included a coperpetrator. The closing time auto store robberies, followed by 2:00 a.m. CVS robberies some driving distance away, formed some kind of pattern that was distinctive in nature and raised an inference of identity. (*People v. Medina* (1995) 11 Cal.4th 694, 748 [admissibility depends upon proof that the various offenses shared distinctive common marks sufficient to raise an inference of identity].) Here, the uncharged offense evidence had a strong tendency toward proving the identity of the perpetrator, a material issue, and there were enough common features or similarities to justify its admission for that purpose (same types of commercial targets, same sequence of events within the store, use of a gun, same time frame, same driving vicinity). (*Ibid.*; *People v. Carpenter* (1997) 15 Cal.4th 312, 378-379 (*Carpenter*); *Lindberg, supra*, 45 Cal.4th 1, 21-22.)

Further, Guy has not pointed to any rule or policy that should have required exclusion of that evidence. (*Carpenter, supra*, 15 Cal.4th 312, 378-379.) As compared to the manner in which the charged robberies took place, the court could permissibly conclude there was no excessively inflammatory effect in admitting the evidence about the uncharged robbery, even though the victims in that case were female. The evidence had a significant tendency to prove the facts of modus operandi and identity, as expressly

14

stated by the trial court. The evidence was not unduly remote or dissimilar, nor was its presentation unduly burdensome in terms of trial time.

## B. Intent

To be relevant on the issue of intent, uncharged crimes need to be sufficiently similar to a charged offense to support an inference that the defendant probably harbored the same intent in each instance. (*People v. Kipp* (1998) 18 Cal.4th 349, 371; *Ewoldt, supra,* 7 Cal.4th 380, 402 [least degree of similarity required to establish intent].) Robbery is the felonious taking of personal property in the possession of another, "from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) By pleading not guilty, Guy placed into dispute all the elements of the robberies and other charges, as of the outset of trial, when the challenged evidentiary ruling was made.

Later, Guy placed the issue of his intent to rob in further dispute, through his defense of duress, and the jury instructions properly addressed that defense. In CALCRIM No. 375, regarding other crimes evidence, the jury was told the evidence had been admitted for a limited purpose, not to prove the defendant's predisposition to commit crimes, but rather to determine whether the necessary element of intent to rob was proven. This effectively eliminated any danger of confusing the issues or misleading the jury. (Evid. Code, § 352.) No defense objections to the instruction have been called to our attention, and "we presume the jury followed these instructions." (*Lindberg, supra*, 45 Cal.4th 1, 25-26.)

15

We conclude these uncharged crimes were sufficiently similar to the charged offenses to support and allow inferences that Guy probably demonstrated and had the same intent to rob store employees in each instance.  (*People v. Kipp*, *supra*, 18 Cal.4th 349, 371; *Alcala, supra*, 43 Cal.4th 1205, 1220 [trial court's exercise of discretion is viewed in light of the record before the trial court when ruling was issued].)  Since there was no error or undue prejudice in the admission of this evidence for the purposes that were presented to the trial court, no harmless error analysis is appropriate.  (See *People v. Walker* (2006) 139 Cal.App.4th 782, 808 [" 'the erroneous admission of prior misconduct evidence does not compel reversal unless a result more favorable to the defendant would have been reasonably probable if such evidence were excluded.' "].)

## DISPOSITION

The judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

HALLER, J.

McDONALD, J.

16