Filed 4/22/16  P. v. Bailey CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>DAWNIELLE BAILEY,<br><br>        Defendant and Appellant. | A144389<br><br>(S.F. City & County<br>Super. Ct. No. SCN222882) |

Defendant Dawnielle Bailey appeals a judgment entered upon a jury verdict finding her guilty of domestic violence (Pen. Code,[1] § 273.5) and assault (§ 240).  She contends the trial court acted improperly in instructing the jury pursuant to CALCRIM No. 306 that, in evaluating the testimony of the victim of the crimes, it could consider the effect of defense counsel's failure to disclose to the prosecutor that defendant would be calling the victim to testify.  We shall affirm the judgment.

## I.  BACKGROUND

### A. Prosecution Case

Nathan Gheen, a nurse in the emergency department at St. Francis Memorial Hospital, testified that Laura F.[2] came into the emergency room with a friend on July 28, 2014.  Laura told him she had pain in her face and head as a result of an assault and that her domestic partner had struck her in the head and face with fists and a kitchen spoon.

---

[1] All statutory references are to the Penal Code.

[2] We shall refer to Laura F. as Laura.

1

Gheen examined Laura and found that she had swelling and tenderness in the area surrounding the lips and a hematoma, or "goose egg," on her head. Laura appeared upset, frightened, "shaken up," and tearful. Gheen, who was a mandated reporter of domestic violence, notified the San Francisco Police Department of the incident. Christian McNeill, a physician assistant at the hospital, also examined Laura, and testified that Laura was very upset that evening. Laura told McNeill her domestic partner had assaulted her multiple times, had beaten her up, and had struck her in the face with a large metal spoon. Laura also told him her partner was intoxicated and "it got out of hand," and that her partner's intoxication was a "recurrent theme." A doctor testified that Laura also had swelling and redness in her left eye area. Laura's injuries were consistent with being punched.

## B. Defense Case

Laura testified on defendant's behalf. She testified that defendant was her wife; they had been a couple for almost five years and had been married for a year.

On the evening of July 28, 2014, Laura and defendant had dinner at a restaurant with friends. During dinner, they began bickering. Laura had two drinks with dinner and was feeling the effects of the alcohol. When they returned home, they bickered again, and then began arguing. Defendant said something that made Laura angry, and Laura "rushed at [defendant], charged her," in an effort to frighten her. She grabbed defendant's arm and pinned her against the counter. Defendant was claustrophobic, and Laura knew her actions would frighten defendant. Defendant panicked and pulled out of Laura's arms, then slapped Laura. Laura stumbled backwards, fell on her buttocks, got up, and left the apartment. She recalled defendant grabbing a spoon they used to stir coffee, but did not recall what defendant did with it. She testified that defendant did not punch her. Three to five seconds elapsed between the time Laura rushed at defendant and the time Laura went out the door.

After leaving the apartment, Laura saw a friend and went to the hospital, "to err on the side of caution." She testified she was "not really doing anything" so she "might as well get checked out quickly." She was feeling emotional, overwhelmed, and sad, but

not afraid. She denied having told anyone at the hospital that defendant had punched her or that she had been beaten up. She denied that defendant was angry while hitting her.

On cross-examination, Laura testified that she and defendant had both been drinking on the evening in question, but that defendant did not seem to be under the influence of alcohol. She testified that she told the physician assistant at the hospital that defendant drank socially, but denied that defendant's drinking bothered her or that defendant's excessive drinking led to fights.

Laura also testified that her injuries were minor. She had a cut on her lower lip, swelling around her eye, and a bump on her head. Her cut lip did not cause pain or discomfort, the swelling around the eye caused pain only when touched, and she did not recall the bump on her head hurting. She had a headache from crying. She testified that she told the nurses and physician assistants that she had been in an "altercation," not that she had been punched or assaulted. She did not recall telling them a spoon had been involved in the incident.

On July 31, 2014, Laura met with an employee of the police department, who asked to take photographs of her. She refused to allow him to do so. She testified that at some point between September and the trial in December 2014, she spoke to someone at the district attorney's office and told her she and defendant had engaged in a mutual altercation. Before the trial began, the prosecutor telephoned Laura, and Laura told him she did not want to speak with him. She testified she did not know the district attorney's office had tried to serve her with a subpoena to testify as a prosecution witness. Two days before she testified, Laura spoke with defense counsel and found out she could testify. She first met defense counsel the day before she testified and told him her version of events for the first time. Immediately before Laura testified, the trial court called a recess to allow her to speak with the prosecutor if she wished to do so; she refused to speak with him.

Laura testified that she cared very much about defendant and that she did not want to see her get into any trouble. She hoped to remain married to defendant.

3

In response to questions from the jury, Laura testified that she received the injuries to her mouth and eye when defendant slapped her and that she did not know how she received the bump on her head.

## C. Rebuttal

John Keane of the San Francisco Police Department's Special Victim's Unit testified as an expert in domestic violence. He testified that it was common for someone to report having been assaulted by an intimate partner and later to give a different account of events in order to prevent the partner from facing jail or probation. In Keane's opinion, the victim's first statement, given while still under the effects of the attack, was generally the most accurate.

## D. Counsel's Explanations

Before Laura testified, an unreported discussion took place between counsel and the court. While the jury was deliberating, a reported discussion took place to allow counsel to place on the record their positions regarding Laura's testimony. Based on the discussion, it appears that defense counsel had not spoken with Laura until late Wednesday afternoon, the day before she testified. He did not inform the prosecutor of Laura's anticipated testimony that evening. Moments before Laura testified, defense counsel told the prosecutor Laura would testify she charged at defendant and defendant struck back, but he did not mention that Laura would testify defendant suffered from claustrophobia. The prosecutor told the court that he had been prejudiced by his inability to prepare for Laura's testimony, particularly because the claim of claustrophobia was relevant to defendant's position that Laura tried to frighten defendant, knowing of her claustrophobia, and that defendant struck Laura in self-defense. Defense counsel acknowledged that he should have informed the prosecutor of Laura's anticipated testimony on Wednesday evening. The trial court expressed the view that defense counsel should have contacted the prosecutor immediately after speaking with Laura and that his failure to do so was a violation of his discovery obligation and deprived the prosecutor of the opportunity to prepare for his cross-examination.

### E.  Verdict and Sentencing

The jury found defendant guilty of inflicting corporal injury resulting in a traumatic condition on an intimate partner (§ 273.5), not guilty of assault with force likely to cause great bodily injury, but guilty of the lesser offense of simple assault (§ 240).  The trial court suspended imposition of sentence and placed defendant on three years' probation.

## II.  DISCUSSION

The trial court instructed the jury pursuant to CALCRIM No. 306 as follows: "Both the People and the defense must disclose their evidence to the other side before trial within the time limit set by law.  Failure to follow this rule may deny the other side the chance to produce all relevant evidence to counter or oppose any evidence in order to receive a fair trial.  [¶] [Defense counsel] failed to disclose to [the prosecutor] that the defense would be calling [Laura] as a witness within the required time limit.  In evaluating the weight and significance of that evidence, you may consider the effect, if any, of that late disclosure.  However, the fact that [defense counsel] failed to disclose evidence within the legal time period is not evidence that Ms. Bailey committed a crime." Defendant contends this instruction should not have been given.

Section 1054.3, subdivision (a)(1), requires a defendant to disclose to the prosecuting attorney "[t]he names and addresses of persons, other than the defendant, he or she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons . . . ."  This provision "requires defense counsel to disclose to the prosecution *all* relevant statements made by persons, other than the defendant, whom the defense intends to call as witnesses at trial, including unrecorded oral statements relayed to defense counsel in an oral report by a third party, such as an investigator, and *oral statements made by the person directly to defense counsel*."  (*Roland v. Superior Court* (2004) 124 Cal.App.4th 154, 160 (*Roland*), italics added; see *id*. at pp. 162–166; *People v. Poletti* (2015) 240 Cal.App.4th 1191, 1210, fn. 7.)  The disclosures must be made at least 30 days before trial; if a party comes into possession of information within 30 days of trial, "disclosure shall be made

5

*immediately*, unless good cause is shown why a disclosure should be denied, restricted, or deferred." (§ 1054.7, italics added.) If a party fails to comply with its discovery obligations, "the court may advise the jury of any failure or refusal to disclose and of any untimely disclosure." (§ 1054.5, subd. (b).)

Defendant contends she did not violate her obligation to disclose that she intended to call Laura as a witness because Laura was already known to the prosecutor and was included on the prosecution's list of proposed witnesses. For this argument, she relies on *People v. Lawson* (2005) 131 Cal.App.4th 1242 (*Lawson*). Despite superficial similarities to this case, *Lawson* does not aid defendant.

The defendant in *Lawson* was convicted of possession of cocaine base. (*Lawson*, *supra*, 131 Cal.App.4th at p. 1243.) When he was arrested, he was with an acquaintance, Theresa Martinez, and the police completed a field identification card on Martinez. (*Id*. at pp. 1243–1244.) During pretrial discovery, the prosecution gave Martinez's field identification card to the defense, and a defense investigator interviewed her and took notes of the interview. (*Id*. at p. 1244.) Defense counsel did not give the investigator's notes to the prosecution and did not put Martinez's name on the defense witness list. (*Ibid*.) Defendant sought to open his defense by calling Martinez as a witness. The prosecutor objected, claiming surprise; as a sanction for withholding Martinez's name from the witness list, the trial court refused to let her testify. (*Ibid*.) Defendant had no other witness available to testify to his version of events; he testified in his own defense and was impeached with his prior convictions. (*Id*. at pp. 1244–1245.) The prosecutor then corrected the record by explaining that his case file showed a previous prosecutor had known about Martinez and given her name and field identification card to the defense, facts the trial prosecutor had overlooked or forgotten. He therefore withdrew his claim of surprise against Martinez's testimony. (*Id*. at p. 1245.) The court reversed its ruling barring Martinez from testifying, but did not revisit its ruling that defense counsel had improperly withheld the investigator's notes. (*Ibid*.) As a sanction for defendant's

failure to disclose the investigator's notes, the trial court instructed the jury with CALJIC No. 2.28, which was similar in many ways to the instruction at issue here.[3]

The appellate court reversed the judgment. It concluded first that the trial court abused its discretion in barring Martinez from testifying, because its ruling rested "on a misapprehension of the facts: Martinez was in truth not a surprise to the prosecution." (*Lawson*, *supra*, 131 Cal.App.4th at p. 1246.) As a result of this mistake, defendant was forced either to testify or to rest his case without presenting a defense. This, the Court of Appeal concluded, was error: "Although other sanctions were available against defense counsel short of barring Martinez and forcing appellant to testify—and as events unfolded, barring Martinez was a precipitous sanction resting on a misapprehension of the facts—appellant paid the price for his lawyer's decision not to name Martinez. The court's belated decision to let Martinez testify remedied some of the error, but by then the damage had been done because the jury learned of appellant's four prior convictions . . . ." (*Id*. at pp. 1246–1247, fn. omitted.)

The Court of Appeal then concluded the trial court erred in instructing the jury with CALJIC No. 2.28. (*Lawson*, *supra*, 131 Cal.App.4th at pp. 1247–1249.) In doing so, it did not question the trial court's finding that defendant violated his discovery obligations by failing to disclose the defense investigator's notes or that a sanction for the

---

[3] The instruction given pursuant to CALJIC No. 2.28 stated: " 'The prosecution and the defense are required to disclose to each other before trial the evidence each intends to present at trial so as to promote the ascertainment of the truth, save court time and avoid any surprise which may arise during the course of the trial. Delay in the disclosure of evidence may deny a party a sufficient opportunity to subpoena necessary witnesses or produce evidence which may exist to rebut the non-complying party's evidence . . . . In this case, the defense failed to timely disclose the following evidence: notes of Theresa Martinez's statement to the defense investigator. This failure to timely disclose evidence was without lawful justification but the Court has, under the law, permitted the production of this evidence during the trial. [¶] The weight and significance of any delayed disclosure are matters for your consideration. However, you should consider whether the untimely disclosed evidence pertains to a fact of importance, something trivial or subject matters already established by other credible evidence.' " (*Lawson*, *supra*, 131 Cal.App.4th at p. 1245.) We shall discuss differences between the version of CALJIC No. 2.28 at issue in *Lawson* and CALCRIM No. 306 below.

violation was appropriate; indeed, the court stated, "Whatever the document's nature, if it contained a witness's statement it was presumably discoverable." (*Id.* at p. 1244, fn. 1; and see *id.* at p. 1247.) Rather, it reasoned that the instruction given, CALJIC No. 2.28, was "problematic" because it applied even when no evidence suggested the defendant was personally responsible for concealing evidence and it did not guide the jury on how to weigh the effect of concealment. (*Id.* at pp. 1247–1248.) The court concluded that, "with rare exception, CALJIC No. 2.28 should not be given without providing the jury some guidance as to how it should consider the discovery violation. The form of this guidance by necessity will differ from case to case. At the very least, it should include a warning that the jury cannot infer a consciousness of guilt from the discovery violation. Such a warning was especially needed here because nothing in the record suggests appellant, as opposed to his defense lawyer, was responsible for the discovery violation; yet the instruction states it was the 'defense,' not 'defendant's attorney,' that was responsible for the nondisclosure. [Citations.]" (*Id.* at p. 1248.) The court noted that the Judicial Council Task Force on Jury Instructions was replacing CALJIC No. 2.28 with "a more narrowly and carefully written instruction," Task Force Instruction No. 306, and expressed its confidence that on retrial the court would not use the same instruction again. (*Id.* at pp. 1248–1249.)

Defendant contends that, under *Lawson*, there was no discovery violation because Laura was known to the prosecution, and indeed was on the prosecution's witness list (and, by extension, on defendant's). This is a misreading of *Lawson*. The appellate court in *Lawson* held the trial court abused its discretion in barring Martinez from *testifying*; here, Laura was permitted to testify. The *Lawson* court did *not* question the trial court's finding that the failure to disclose the investigator's notes constituted a discovery violation and that a jury instruction to that effect was appropriate; the appellate court merely criticized the language of the instruction given and suggested a different instruction be given in future. (*Lawson*, *supra*, 131 Cal.App.4th at pp. 1247–1249.)

Here, although the prosecution knew of Laura's identity, defense counsel failed to disclose the substance of her statements to him, as required by section 1054.3,

subdivision (a)(1), until just moments before she testified, and did not include in that disclosure the fact that Laura would testify defendant suffered from claustrophobia. (See *Roland*, *supra*, 124 Cal.App.4th at p. 161 [defense counsel must disclose oral statements made by the witness].) Defense counsel acknowledged that he should have contacted the prosecutor after he spoke with Laura the afternoon before she testified, and the trial court noted that the prosecutor would have been better able to prepare for his cross-examination if he had had advance notice of her testimony rather than "develop[ing] one on the fly." On these facts, we find no error in the trial court's conclusion that defense counsel violated his discovery obligations and that it was appropriate so to inform the jury.

We are not persuaded otherwise by defendant's reliance on her pretrial motions in limine, which stated, "*The defense puts the prosecution on notice that it explicitly relies on the prosecution's witness list in formulating the defense-witness list*, ensuring compliance with reciprocal-discovery duties under Pen. Code, § 1054 *et seq*. [¶] Therefore, if the prosecution decides that it will not call a listed witness, the defense requests immediate notification, so that the defense witness list may be amended, if necessary. Only with this information can the defense meet its obligation to disclose witnesses it intends to call, recognizing that 'the determination whether to call a witness is peculiarly within the discretion of counsel.' " (Fn. omitted, italics added.) Even if we were persuaded that this statement put the prosecution on notice that defendant intended to call Laura as a witness, it did not satisfy defendant's obligation to disclose Laura's statements.

Defendant also points out that "the prosecution's right to discover defendant's witnesses under section 1054.3 is triggered by the *intent* of the defense to call that witness." (*Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 375; and see *People v. Tillis* (1998) 18 Cal.4th 284, 292 ["To establish on appeal a violation of section 1054.1, subdivision (a), in failing to disclose a witness, the record must affirmatively demonstrate that a specific witness or witnesses were known to and intended to be called by the prosecutor, but were undisclosed to the defense as required by the discovery chapter"].)

9

Because defense counsel did not intend to call Laura until he spoke with her the day before her testimony, defendant argues, there was no discovery violation. Section 1054.7, however, requires disclosure to be made "immediately" if information becomes known to a party within 30 days of trial. The trial court could reasonably find a discovery violation when defense counsel waited until the day after he spoke with Laura, shortly before she testified, to inform the prosecutor of her anticipated testimony.

Defendant contends, however, that there was a reasonable likelihood the jury misapplied the instruction. He relies on *Estelle v. McGuire* (1991) 502 U.S. 62, 72, which states, "It is well established that [an] instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record. [Citation.] In addition, in reviewing an ambiguous instruction . . . , we inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." (Accord, *Middleton v. McNeil* (2004) 541 U.S. 433, 437.) Defendant contends the prosecutor made statements during closing argument that raised a reasonable likelihood the jury misapplied the challenged instruction, CALCRIM No. 306. The prosecutor argued to the jury that Laura told the truth at the hospital immediately after the incident and that she lied on the stand. He later pointed out that Laura had refused to speak to him before she testified, and continued, "Why is she not credible? Because we didn't get notice of this person as a witness until this morning. She was purposefully brought into court on display as a surprise. [¶] And what the instruction tells you is that you're allowed to consider that in weighing the significance of her evidence, of her story that she wanted to give. So, when you're deciding whether to believe her or not, you're allowed to consider the fact that she was a sandbag witness. [¶] If this is someone who clearly just wanted us to know what happened—" Defense counsel objected to the argument on the ground that the instruction did not relate to witness credibility, and the trial court responded, "The instruction is quite clear as to what it goes to. I will direct the jury's attention to it now. [¶] It is on the bottom of Page 6. It says explicitly: In evaluating the weight and

10

significance of that evidence, that evidence referring to [Laura's] testimony, you may consider the effect, if any, of that late disclosure."

Nothing in the prosecutor's argument persuades us that the jury likely misapplied the instruction. The prosecutor could properly point out that he had no notice of Laura's expected testimony; indeed, as our high court has noted: "[W]hile not constituting evidence of the defendant's consciousness of his or her own guilt, the fact of a discovery violation might properly be viewed by the jury as evidence of the defendant's consciousness of the lack of credibility of the evidence that has been presented on his or her behalf." (*People v. Riggs* (2008) 44 Cal.4th 248, 308.) The instruction itself, to which the trial court drew the jury's attention, stated not only that the jury could consider the late disclosure in evaluating the weight and significance of Laura's evidence, but also that the fact that defense counsel failed to make the required disclose in a timely manner "is not evidence that Ms. Bailey committed a crime." The prosecutor emphasized this final point in his argument, telling the jury, "[T]he fact that we didn't know she was going to be here is not necessarily evidence—is not in evidence at all, that the defendant is guilty. What is it is [*sic*] for you to consider is that it affects my ability to prepare for her." This record does not establish a likelihood that the jury misapplied the instruction.

Defendant also suggests that the instruction itself is improper because it provides inadequate guidance on how the discovery violation might affect the jury's deliberations and because it could lead the jury to punish defendant for her lawyer's actions. For this argument, he relies on cases that criticize a different instruction on discovery violations, CALJIC No. 2.28. We have already discussed one of those cases, *Lawson*, which described the version of CALJIC No. 2.28 before it as "problematic" because it stated that " 'the defense failed to timely disclose' " evidence, thus applying even when no evidence suggested the defendant was personally responsible for the discovery violation, and because it did not provide sufficient guidance on how to weigh the effect of the concealment. (*Lawson*, *supra*, 131 Cal.App.4th at pp. 1245, 1247–1248.) The other cases defendant cites, *People v. Cabral* (2004) 121 Cal.App.4th 748, 751–753 and *People v. Bell* (2004) 118 Cal.App.4th 249, 253–256, criticize CALJIC No. 2.28 for similar

11

reasons.  As the *Lawson* court explained, however, the instruction given in the present case, CALCRIM No. 306, was intended to remedy the shortcomings of CALJIC No. 2.28, "particularly its undermining of a defendant's right to a fair trial by attributing an attorney's malfeasance to the defendant."  (*Lawson*, at pp. 1248–1249; and see *People v. Thomas* (2011) 51 Cal.4th 449, 484, fn. 6 ["CALJIC No. 2.28 has since been modified to address the concerns expressed in *People v. Bell*, *supra*, 118 Cal.App.4th 249 and its progeny.  (CALJIC 2.28 (Fall 2010 ed.); see also CALCRIM No. 306.)"].)  In criticizing CALJIC No. 2.28's lack of guidance to the jury, *Lawson* also indicated that the guidance given should at the least "include a warning that the jury cannot infer a consciousness of guilt from the discovery violation."  (*Lawson*, at p. 1248.)

The instruction given here not only attributed the violation to defense counsel, rather than defendant, but also explicitly told the jury the violation was not evidence defendant committed a crime.  We see no basis to conclude the instruction was improper or that the jury was misled.

### III.    DISPOSITION

The judgment is affirmed.

_____
Rivera, J.

We concur:


_____
Reardon, Acting P.J.


_____
Streeter, J.

12